**In the Matter of the Petition of UCO TERMINALS, INC., Petitioner,**

v.

**APEX OIL COMPANY, Respondent.**

No. 83 Civ. 8082(RJW).

United States District Court,
S.D. New York.

March 1, 1984.

Freehill, Hogan & Mahar, New York City, for petitioner; Eugene J. O'Connor, New York City, of counsel.

Donald F. Mooney, New York City, for respondent.

**ROBERT J. WARD, District Judge.**

On September 16, 1983, an arbitration panel entered an award in favor of petitioner, UCO Terminals, Inc. ("UCO") against respondent, Apex Oil Co. ("Apex"). That award was in the amount of $154,977.47, which consisted of $117,607.89 plus $37,-369.58 in pre-award interest. Petitioner has moved before this Court for an order confirming the arbitration award, with post-award interest, costs and fees, pursuant to section 9 of the United States Arbitration Act of 1925 ("the Act"), 9 U.S.C. § 9. Respondent has cross-moved to have the arbitration award vacated pursuant to section 10 of the Act, 9 U.S.C. § 10, on the ground that one member of the three-member arbitration panel failed to disclose certain business dealings with respondent. In the alternative, respondent moves to have the arbitration award modified pursuant to section 11 of the Act, 9 U.S.C. § 11, on the ground that certain calculations of interest were incorrect or unauthorized. For the reasons hereinafter stated, the Court reserves decision on the question of the method to be employed in calculating post-award interest. In all other respects, petitioner's motion is granted and respondent's cross-motion is denied.

## I THE IMPARTIALITY OF THE PANEL

Apex' motion to vacate the arbitration award is based on its contention that one of the arbitrators, Alexis Nichols, failed to adequately disclose and/or affirmatively misrepresented some of his business dealings. In large part, these omissions are alleged to have occurred at a hearing held on October 25, 1982 to enable the parties to evaluate the three then-nominees to the arbitration panel. In addition, Apex alleges that Mr. Nichols improperly failed to disclose a charter party that was entered into while the arbitration was pending.

Alexis Nichols is the president of Brokerage and Management Corp., an operator of tankers and dry cargo ships. Apex has alleged, in a description not disputed by UCO, that Brokerage and Management Corp. is the exclusive agent for numerous tankers and cargo ships owned by Trade & Transport Group, and that both of the latter two enterprises are "controlled" by the same individual. Apex charges that Mr. Nichols failed to disclose:

a) the relationship between Brokerage and Management Corp. and Trade & Transport Group;

b) the true nature of the business engaged in by Brokerage and Management Corp.;

c) the existence of a charter party, signed in April 1982 by Mr. Nichols, between Trade & Transport, Inc. and Apex; and

d) the signing during the pendency of the instant arbitration, again by Mr. Nichols, of a charter party between Trade & Transport, Inc. and Apex.

With the exception of the fourth allegation, all of these omissions or misrepresentations are said to have occurred at the hearing of October 25, 1982.

■ The legal principles that govern a challenge to the impartiality of an arbitration panel under section 10 of the Act are well settled. The burden of proof rests upon Apex, as the party asserting bias. *See Andros Compania Maritima v. Marc Rich & Co., A.G.,* 579 F.2d 691, 700 (2d Cir.1978); *Reed & Martin, Inc. v. Westinghouse Elec. Corp.,* 439 F.2d 1268, 1275 (2d Cir.1971). Apex must show "evident partiality," rather than merely the "appearance of bias." *See International Produce, Inc. v. A/S Rosshavet,* 638 F.2d 548, 551 (2d Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981).

■ An analysis of Apex' claims must begin with an examination of Apex' assertion that Mr. Nichols failed adequately to disclose the relationship between Brokerage and Management Corp. and the Trade & Transport Group. A reading of the transcript of the October 25, 1982 hearing shows that Mr. Nichols made no attempt

whatever to conceal his relationship with Trade & Transport. He mentioned Trade & Transport no fewer than nine times at the hearing, and gave every indication that the business affairs of Trade & Transport were one of his primary responsibilities as president of Brokerage and Management Corp. Mr. Nichols treated the business dealings of Trade & Transport as a matter relevant to his own impartiality, and one which should be disclosed and explored at the hearing.

No other inference could be reasonably drawn from Mr. Nichols' testimony than that he considered himself to represent the interests of Trade & Transport on a regular basis. Although David Nourse, Apex' counsel at the hearing, elected not to question Mr. Nichols directly on the relationship between Brokerage and Management Corp. and Trade & Transport, Mr. Nourse's questions unambiguously indicate that he understood that Mr. Nichols often represented Trade & Transport. Mr. Nourse questioned Mr. Nichols quite directly about both the past and present business dealings of Trade & Transport, indicating that he understood that Mr. Nichols' firm had a substantial relationship with Trade & Transport.[1]

Mr. Nichols' forthright treatment of his association with Trade & Transport is significant for two reasons. First, it belies respondent's suggestion that Mr. Nichols concealed an "inherent bias in favor of owner's position." Affidavit of Donald F. Mooney at 11 (Dec. 7, 1983). Second, it undermines Apex' contention that it had no notice of Mr. Nichols' involvement in the two charter parties between Trade & Transport and Apex. The Court will discuss each of respondent's contentions in turn.

Apex' claim that the arbitration award should be set aside because of Mr. Nichols' alleged inherent bias toward the interests of ship owners must fail. Not only are the facts which form the basis of this allegation not the type which constitute impermissible bias, but those facts were also fully available to Apex. In applying section 10 of the Act, the Second Circuit has observed, "[T]his court ... has treated the obligation to which arbitrators are subject as being to disclose dealings of which the parties cannot reasonably be expected to be aware, i.e. dealings 'not in the ordinary course of ... business.'" *Cook Indus. v. C. Itoh & Co. (America)*, 449 F.2d 106, 108 (2d Cir.1971) (quoting *Garfield & Co. v. Wiest*, 432 F.2d 849, 854 (2d Cir.1970), cert. denied, 401 U.S. 940, 91 S.Ct. 939, 28 L.Ed.2d 220 (1971)), cert. denied, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972). In addition, this Court has observed: "To set aside an award for arbitrator partiality, 'the interest of bias ... must be direct, definite, and capable of demonstration rather than remote, uncertain, or speculative.'" *Sidarma Societa Italiana v. Holt Marine Indus.*, 515 F.Supp. 1302, 1307 (S.D.N.Y. 1981) (quoting *Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d 1196, 1200 (7th Cir.), cert. denied, 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980)).

The professional associations cited by Apex as indicating some "inherent bias" on the part of Mr. Nichols are in the ordinary course of his business as president of Brokerage and Management Corp. Those associations were adequately disclosed by Mr. Nichols at the October 25, 1982 hearing. Furthermore, they are disclosed in the Society of Maritime Arbitrator's Roster of Members. Such associations are precisely the sort that the Second Circuit has repeatedly observed may *not* serve as the basis for a finding of bias, lest a dissatisfied party be provided with a pretext for a tardy challenge to an award. *See International Produce, Inc. v. A/S Rosshavet*, 638 F.2d at 552; *Andros Compania Maritima v. Marc Rich & Co., A.G.*, 579 F.2d at

---

1. Mr. Nichols stated at the hearing that he had known Mr. Nourse professionally for many years. UCO states, albeit without substantiation, that by virtue of this long-standing professional relationship, Mr. Nourse was well acquainted with Mr. Nichols' relationship with Trade & Transport and therefore limited his questioning on that subject. That contention is uncontested by Apex.

700–01; *Cook Indus. v. C. Itoh & Co. (America), supra.*

The Court next turns to Apex' contentions regarding the two charter parties between Apex and Trade & Transport, Inc. The central thrust of Apex' argument on this point borders on the absurd. Apex contends that it should be allowed to overturn the award because Mr. Nichols failed to disclose to Apex the existence of two contracts to which Apex was itself a party. Apex has pointed to no case in which such a claim has been vindicated, nor is the Court aware of any precedent supporting Apex' position. In requiring disclosure under section 10 of the Act, the courts have consistently focused, by logical necessity, on undisclosed relationships with one's adversary, not with one's self. *See, e.g., Sanko S.S. Co. v. Cook Indus.*, 495 F.2d 1260, 1263–64 (2d Cir.1973).

Respondent has offered a number of arguments in an attempt to circumvent the apparent paradox in its position on this point. Apex' primary contention, as discussed *supra* at 1215–1216, is that it was not made adequately aware of Mr. Nichols' connection with Trade & Transport. The Court has already noted its rejection of that contention. The Court has also observed that the questions of Apex' counsel at the October 25, 1982 hearing unambiguously indicate that he understood that Mr. Nichols often represented the interest of Trade & Transport, and that transactions involving Trade & Transport most probably involved Mr. Nichols. Had any more detailed exploration of Mr. Nichols' association with Trade & Transport been desired, Apex had ample opportunity and notice to pursue it. Apex' knowledge of this relationship bars it from now claiming that it

had no knowledge of the alleged significance, vis-a-vis Mr. Nichols, of its two charter parties.[2]

Finally, the Court must reject Apex' contention that Mr. Nichols affirmatively misrepresented the existence of the April 1982 charter party at the October 25, 1982 hearing.[3] It should first be observed that this allegation is of questionable relevance, given that the Court has already concluded that Apex had adequate notice of the April 1982 charter party and Mr. Nichols' relationship thereto. More importantly, however, Apex' allegation on this issue is simply inconsistent with the record of the October 25, 1982 hearing. Three times Mr. Nichols stated that it was "conceivable" that Trade & Transport may have had a charter party with Apex in the past. He stated that he did not personally recall any such charter party, and knew that there were not any then pending. That testimony, even if relevant to Apex' instant motion, is not misrepresentative.

None of the contentions proffered by Apex establish that the arbitration award in this case was tainted by evident partiality or inadequate disclosure. Accordingly, Apex' motion to vacate the arbitration award pursuant to section 10 of the Act is denied.

## II  THE AWARD

■ In addition to challenging the impartiality of the arbitration panel, Apex has presented a number of objections to the arbitration award itself. All of these latter objections involve some aspect of the calculation of interest. In addressing these objections, the Court is guided by the principle that its power to modify an arbitrators'

---

**2.** The parties dispute whether the two charter parties at issue here involved enough money or rancor to affect Mr. Nichols' impartiality. UCO, and Mr. Nichols, take the position that the charter parties were not significant enough to warrant recollection or to influence Mr. Nichols' impartiality. Apex takes the opposite position. It is interesting to note, however, that in disputing whether it had notice of the charter parties, Apex has filed an affidavit stating that a number of key personnel at Apex were unaware of both the charter parties and the attendant demurrage

disputes. *See* Affidavit of Michael C. Aufdenspring (Dec. 13, 1983). For the purposes of the instant motions, however, the Court has assumed, as it must, that the charter parties were relatively significant.

**3.** This discussion is not relevant to the February 1983 charter party, since Apex alleges no affirmative misrepresentation in regard to that later contract.

award is severely limited. That power is confined to grounds specified in the Act or encompassed in the judicially created standard of a "manifest disregard" of applicable law. Absent such a showing, the correctness of an award, in law or fact, is not subject to judicial review. *See Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir.1980); *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 429–32 (2d Cir.1974); *Office of Supply v. New York Navigation Co.*, 469 F.2d 377, 379–80 (2d Cir.1972).

### A. *Post-Award Interest*

■ The arbitrators' award provides for interest to accrue on the award from thirty days following the date of the award until it is paid or affirmed by this Court.[4] Apex contends that the arbitrators were without authority to assess such post-award interest. However, Apex has offered virtually nothing, either in the arbitration agreement or in the case law, to support this contention. Post-award interest is an entirely rational arrangement established by the arbitrators to compensate UCO for its loss. *See generally, Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55 (2d Cir.1984); *Candiano v. Moore-McCormack Lines*, 407 F.2d 385 (2d Cir.1969). It is also eminently reasonable to treat such use as arising out of the arbitrable dispute between the parties. Absent some express limitation on such an award, the Court can discern no disregard of applicable law or of the submission agreement here. *Accord, Laminoirs-Trefileries-Cableries de Lens, S.A. v. Southwire Co.*, 484 F.Supp. 1063, 1069 (N.D.Ga.1980); *see also A/S Siljestad v. Hideca Trading, Inc.*, 541 F.Supp. 58,

61–62 (S.D.N.Y.1981), *aff'd*, 678 F.2d 391 (2d Cir.1982).

■ In addition, the Court rejects respondent's argument that the annual rate of 12% established in the arbitration award for post-award interest should be set aside. Apex, which as the party challenging the award bears the burden of demonstrating any ground for modification of the award, has pointed to nothing to support its position. Again the Court perceives no disregard of applicable law here, nor any basis for Apex' unsubstantiated contention that the 12% rate is excessively high. Furthermore, the arbitration award is not subject to judicial review for merely erroneous findings of fact, unless such errors are "completely irrational." *See I/S Stavborg v. National Metal Converters*, 500 F.2d at 430–31. Apex has not demonstrated that the setting of a 12% annual rate was irrational.

### B. *The Compounding of Interest*

■ The only outstanding issue in this litigation is the question of whether the arbitration award provides for the compounding of interest. The arbitrators' use in the award of the phrase "interest is to *resume* at the rate of 12% per annum ..." plainly indicates that *post-award* interest is to be calculated in the same manner, albeit at a different rate, as was pre-award interest. The arbitrators' calculation of pre-award interest as $37,369.58 strongly suggests that the arbitrators intended interest to be calculated simply on the original $117,607.89, with no compounding.[5] If so, post-award interest should also be calculated as simple interest at 12% per annum on $117,607.89, or $38.67 per diem.

---

**4.** As discussed *infra* at 1218, the parties dispute the method by which the arbitrators intended the post-award 12% interest should be calculated. That dispute, however, does not affect the issue of whether the arbitrators had authority to assess such interest.

**5.** The arbitration award assesses pre-award interest of $37,369.58. The Court is at a loss to reproduce the precise calculations that produced this figure. As Apex correctly points out, simple interest on $117,607.89 from June 17, 1981 to September 16, 1983 (2 years and 91 days, calculated on a 365-day-year basis) should

be $37,035.20. Even if the interest on the final fraction of a year is calculated for 92 days on a 360-day-year basis, the arbitration award exceeds simple interest by more than $250.00. Compounding, on the other hand, even if done only on an annual basis, would have resulted in interest in excess of $40,570.00.

The Court assumes that these figures may well lead the parties to agree that the arbitration agreement should be construed as providing for simple interest. If so, the agreement would also be read to contain a miscalculation in pre-award interest of $334.38 in petitioner's favor. Indeed, UCO's response to Apex' motion to mod-

The Court cannot be certain, however, that the method outlined is the one intended by the arbitrators. Accordingly, the Court will direct that such method be employed, with the $334.38 adjustment outlined in footnote 5, only if petitioner voluntarily accepts that method. Otherwise, the case will be remanded to the arbitrators for clarification on the question of how the 12% post-award interest is to be calculated.

## CONCLUSION

Respondent has failed to show any partiality on the part of any of the arbitrators that violates the requirements of section 10 of the Act. Therefore, respondent's cross-motion to vacate the arbitration award is denied.

For the reasons heretofore set forth, the Court reserves decision on the question of the method by which post-award interest is to be calculated, leaving it to petitioner to decide whether it will press its claim for the compounding of such interest. In all other respects, petitioner's motion to confirm the award is granted, and respondent's cross-motion to modify the award is denied.

Settle judgment on notice.

ify suggests that UCO may concede that such an error has been made. *See* Affidavit of Eugene J. O'Connor (Dec. 12, 1983). This Court is empowered to make such arithmetical corrections pursuant to section 11(a) of the Act, 9 U.S.C. § 11(a).