**SOFIA SHIPPING COMPANY, LTD., Petitioner,**

v.

**AMOCO TRANSPORT COMPANY, Respondent.**

**No. 85 Civ. 5126 (CHT).**

United States District Court, S.D. New York.

Feb. 6, 1986.

Poles, Tublin, Patestides & Stratakis, New York City, for petitioner; Christ Stratakis, William J. Brady III, of counsel.

Kirlin, Campbell & Keating, New York City, for respondent; Armand Maurice Pare, Jr., John P. Sandercock, Arthur E. Hoffmann, Jr., Bradley F. Gandrup, Jr., of counsel.

TENNEY, District Judge.

In this action, the petitioner, Sofia Shipping Company, Ltd. ("Sofia"), is seeking to confirm an arbitration award which was rendered in its ·favor. The respondent, Amoco Transport Company ("Amoco"),

cross-moves to vacate the award. The petition to confirm is granted.

## BACKGROUND

The controversy here arises out of a contract between the petitioner and respondent. Sofia, as the owner of an oil tanker—the T/T ZAKYNTHO—agreed to charter the ship to Amoco for a period of approximately six months. Under the terms of the charter agreement, the transaction was "subject to [Amoco's] favorable report after inspection of [the] vessel." Amoco rejected the ship after inspecting it and refused to honor the contract. The question of whether Amoco had wrongfully breached the contract was submitted to arbitration. A panel of three arbitrators concluded that Amoco had acted unreasonably in rejecting the ship, and that Sofia was entitled to damages for breach of contract.

In the petition now before the Court, Amoco argues that: 1) the arbitrators' decision should be vacated because it violates public policy; 2) the amount of the damages should be modified under Section 11 of the Federal Arbitration Act [1] ("Arbitration Act"); and 3) the decision should be vacated under Section 10 of the Arbitration Act [2] because one of the arbitrators, Alexis Nichols ("Nichols"), failed to disclose certain information. For the reasons set forth below, the Court rejects these arguments.

## DISCUSSION

### 1. *Public Policy*

■ The standard of review for scrutinizing an arbitration award is extremely narrow. *See United States Steel and Carnegie Pension Fund v. Dickinson,* 753 F.2d 250, 252 (2d Cir.1985); *Diapulse Corp. v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir.1980); *I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424, 429–32 (2d Cir.1974). Courts will not vacate an arbitration award unless the arbitrators acted with a manifest disregard of the law, or the facts of the case do not support the award. *See Koch Oil, S.A. v. Transocean Gulf Oil Co.,* 751 F.2d 551, 554 (2d Cir. 1985); *Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739, 740 (2d Cir.1978). An arbitrator's interpretation of a contract is binding so long as that interpretation is barely colorable. *See John T. Brady & Co. v. Form-Eze Systems, Inc.,* 623 F.2d 261, 264 (2d Cir.1980), *cert. denied,* 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980).

■ Applying this standard, the Court concludes that there is no merit to Amoco's argument that the arbitrators' decision should be vacated on public policy grounds. Amoco claims that the arbitrators' decision contravenes the public policy of preserving maritime safety and preventing pollution. Specifically, Amoco argues that the tanker was in such bad condition that chartering it to transport oil would have posed a serious threat to the environment. Although Amoco characterizes this argument as involving a matter of public policy, Amoco is essentially arguing that its rejection of the tanker was reasonable, and therefore the contract was not wrongfully breached. This argument is simply an attempt to have the award set aside on its merits, which the Court declines to do.

The arbitrators concluded that the tanker was seaworthy. The panel found that Amoco's grounds for rejecting the ship were invalid and any violations that existed at the time of the inspection were "minor and capable of being rectified in short order." In addition, the arbitrators concluded that none of the violations reported by Amoco's inspectors "could be regarded as

---

1. Section 11 provides in relevant part that a district court:

   may make an order modifying or correcting the award upon the application of any party to the arbitration ... [w]here there was an evident material miscalculation of figures[.]

   9 U.S.C. § 11.

2. Section 10 provides in relevant part that the court may vacate an award:

   (a) Where the award was procured by corruption, fraud, or undue means [or]

   (b) Where there was evident partiality or corruption in the arbitrators[.]

   9 U.S.C. § 10(a), (b).

being serious enough to preclude the Vessel from performing reasonably under the agreed charter party terms." In light of the arbitrators' findings, Amoco's public policy argument cannot stand.

### 2. *Modifying the Award*

It is well established that the court's power to modify an arbitration award is severely limited. *See Kurt Orban v. Angeles Metal Systems,* 573 F.2d at 740; *UCO Terminals, Inc. v. Apex Oil Co.,* 583 F.Supp. 1213, 1217 (S.D.N.Y.1984), *aff'd mem.,* 751 F.2d 371 (2d Cir.1984). An award may be modified under Section 11 of the Arbitration Act where the figures have been miscalculated, but that is not the case here. In this instance, the arbitrators clearly articulated the basis for their award and set forth their calculations in detail. There is no evidence that the arbitrators erred.

■ The measure of damages for breach of contract is the amount necessary to put the injured party in the same economic position as he would have been, if the contract had been fulfilled. *See Adams v. Lindblad Travel, Inc.,* 730 F.2d 89, 92 (2d Cir.1984); *Perma Research & Dev. v. Singer Co.,* 542 F.2d 111, 116 (2d Cir.), *cert. denied,* 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976). A review of the award indicates that the panel applied this standard.

■ Amoco claims that the panel based its opinion on erroneous charter rates, and that the panel failed to consider all relevant factors relating to profits and earnings. The panel, however, specifically noted that it was applying "its commercial experience in reviewing [the relevant market conditions] so as to obtain a fair figure of damages[.]" [3] The Court will not substitute its judgment for the panel's. In light of the limited scope of review, and absent any showing that the panel miscalculated the damages, Amoco's petition to modify the award is denied.

### 3. *Failure to Disclose*

■ Amoco's argument that the award should be vacated because Nichols, one of the arbitrators, failed to adequately disclose certain relevant information presents a thornier question. After carefully examining the record, however, the Court is convinced that the arbitration award should not be disturbed.

Amoco argues that the award should be vacated because Nichols did not fully disclose his relationship with Aghelis Boulalis ("Boulalis") who was an employee of and a witness for Sofia, the petitioner.[4] Nichols failed to disclose that Boulalis was serving as an arbitrator in a number of arbitrations that involved Nichols' employer.[5]

■ Section 10 of the Arbitration Act authorizes a district court to vacate an award "[w]here there was evident partiality or corruption in the arbitrators[.]" The burden of proof in this instance rests on Amoco, as the party asserting the claim of bias. *See Reed & Martin, Inc. v. Westinghouse Elec. Corp.,* 439 F.2d 1268, 1275 (2d Cir.1971); *UCO Terminals Inc. v. Apex Oil Co.,* 583 F.Supp. at 1214. Courts are reluctant to set aside an award based on a claim of evident partiality, and will do so only if the bias of the arbitrator is direct and definite; mere speculation is not enough. *See Merit Ins. Co. v. Leatherby*

---

**3.** As the Second Circuit noted, "a principal attraction of arbitration is the expertise of those who decide the controversy." *Andros Compania Maritima v. Marc Rich & Co. A.G.,* 579 F.2d 691, 701 (2d Cir.1978).

**4.** At the time of the arbitration hearing, Boulalis was the Director and Executive Vice President of Ionian Transport Co., which was the New York agent for the petitioner.

**5.** Nichols is the President of Brokerage & Management Corporation, a New York corpora-

tion, which serves as an agent for foreign vessel owners. Brokerage & Management was engaged by a Liberian corporation, Trade & Transport, which acts as the general agent for several foreign flag vessels. Trade & Transport engaged Brokerage & Management to represent the interests of its principals in the United States, and Boulalis was serving as an arbitrator in a number of disputes involving Trade & Transport. *See* Nichols Aff. ¶ 3.

*Ins. Co.,* 714 F.2d 673, 682 (7th Cir.), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983); *Sidarma Societa Italiana v. Holt Marine Ind.,* 515 F.Supp. 1302, 1307 (S.D.N.Y.1981), *aff'd mem.,* 681 F.2d 802 (2d Cir.1981).

The instant matter is governed by *International Produce, Inc. v. A/S Rosshavet,* 638 F.2d 548 (2d Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981). In that case, the Second Circuit held that the mere "appearance of bias" is not sufficient to justify vacating an arbitration award under Section 10. There must be a showing of actual bias on the part of the arbitrator. *Id.* at 551. The record in this case reveals no evidence of any direct or definite partiality on the part of Nichols.

Indeed, Amoco essentially concedes the absence of actual bias, and argues instead that the Court should adopt and apply the appearance-of-bias standard. *See* Respondent's Memorandum of Law at 39–43. Amoco urges the Court to infer that because Boulalis was acting as an arbitrator in a matter involving Nichols' employer, Nichols and Boulalis were prepared to exchange favorable decisions. Specifically, Amoco alleges that Nichols cast his vote in favor of the petitioner in order to obtain, or in exchange for, a decision by Boulalis favoring Nichols' employer.

Amoco's allegations are based on pure speculation. The portions of the hearing transcript submitted in connection with this petition give no indication that Nichols acted in a partial or biased manner, and Amoco offers no other concrete evidence to support its claim. The circumstances surrounding the arbitration award also undermine Amoco's theory.

The panel in the instant case did not render its decision until 1985. Boulalis stopped working for the petitioner in 1983, approximately two years before the panel issued its opinion. It would be unreasonable for the Court to assume that Nichols voted for the petitioner in order to curry favor with Boulalis, when Boulalis was not even employed by the petitioner at the time of the decision.

It should also be noted that the award in this case was rendered by a panel of three arbitrators, and the decision was a unanimous one. The panel included an arbitrator appointed by Amoco, and another who was selected by Amoco's appointee and Nichols. There were no cross-appointments between Boulalis and Nichols. Boulalis did not appoint Nichols to the panel in the instant case, nor did Nichols appoint Boulalis to any of the panels in the arbitrations involving Nichols' employer. The appointments were made by the attorneys of the respective parties in each instance.

In addition, Nichols did not have any direct interest, financial or otherwise, in the outcome of any of the arbitrations at issue, nor did Boulalis. *See* Nichols Aff. ¶¶ 8–9; Boulalis Aff. ¶ 3. Moreover, neither Boulalis nor the petitioner had a business relationship with Nichols. *See* Nichols Aff. ¶ 8.

Nichols did disclose a number of relevant facts concerning his relationship to the parties involved. Nichols testified that he knew Boulalis and that they had a professional relationship based on their activities as arbitrators. *See* Transcript at pp. 7–13.[6]

---

**6.** Nichols stated in relevant part:

I am the president of Brokers & Management Corporation. Brokers & Management Corporation acts as agent for foreign owners in the United States.

    \*     \*     \*     \*     \*     \*

I know two executives of Ionian Transport: one is Mr. Spyros Mylonas, who I believe is the president, and Captain Angelo Boulalas, who is the executive vice president.

    \*     \*     \*     \*     \*     \*

With respect to Captain Boulalas, I also know this gentleman for a good ten years and by virtue of the fact that he is also a maritime arbitrator and a member of the Society of Maritime Arbitrators, we have sat on a number of panels together and we presently sit on several.

    \*     \*     \*     \*     \*     \*

MR. ROBINSON: Mr. Nichols, how well do you know Captain Boulalas? You said you have known him for ten years.

MR. NICHOLS: I know Captain Boulalas for about ten years. How well I know him, let me describe first of all the degree of acquaintance.

Nichols stated that he and Boulalis were both members of the Society of Maritime Arbitrators and that he had known Boulalis for at least ten years. He also testified that he had worked with Boulalis at the same firm in 1970 or 1971. In addition, Nichols disclosed that he and Boulalis had served together on a number of arbitration panels in the past, and that they were serving together on several panels at the time of the hearing. Despite the information disclosed, Amoco made no objection to Nichols' appointment to the panel.

It is beyond dispute that the responsibility to disclose all relevant information rested on Nichols as a potential arbitrator. *See Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 149, 89 S.Ct. 337, 339, 21 L.Ed.2d 301 (1968). Nichols was clearly at fault for neglecting to disclose the information at issue here. Nichols' failure to make full disclosure, however, was not so significant that it constituted "evident partiality." Nichols states in an affidavit—and the Court has no reason to disbelieve him—that he failed to raise the issue of Boulalis'

appointments as an arbitrator simply because he did not think of it.[7] *See* Nichols Aff. ¶ 12.

In *Merit Ins. Co. v. Leatherby*, 714 F.2d at 683, the court pointed out that there was ample opportunity for the parties involved to conduct an investigation into the background of the arbitrators prior to or during the arbitration. The court noted that losing parties should not be encouraged to conduct post-arbitration investigations into the background of the arbitrators in the hope of uncovering evidence of some undisclosed fact. Such investigations result in additional costs and litigation, and undermine the finality of arbitration. *Id.* Losing parties can easily seize upon an undisclosed relationship as a pretext for vacating an award. *See Commonwealth Coatings*, 393 U.S. at 151, 89 S.Ct. at 340 (White, J., concurring); *Andros v. Marc Rich*, 579 F.2d 691 at 702 (2d Cir.1978).

In the case at bar, Amoco did not make an extensive investigation into Nichols' background, or object to Nichols' appointment until after a decision was rendered against Amoco, almost three years after

---

He is not what you may call a social friend, although we do see each other at the luncheons of the Society of Maritime Arbitrators and other functions that the Society sponsors.

Back in 1970 or '71 Captain Boulalas and I were employed by the same firm, meaning LaMorte Burns & Company, Inc.

At that time Captain Boulalas was a claims adjuster and so was I. I was handling cargo claims and disputes under the FD&D rules of the clubs and Captain Boulalas was in a different department assisting Augie Burns on general agency adjustments.

At that time, I saw Captain Boulalas, I would say, daily, being that we were working within the same organization.

Since I left that company in '72, Captain Boulalas left the same company sometime thereafter and he was a surveyor. However, I never used his services as a surveyor and I would say that the extent of my associations with him are no more or no less than those that one has by virtue of a membership within a society such as the SMA, which is the same degree of closeness that I had with Mr. van Gelder or Mr. Zubrod [the other arbitrators on the panel].

MR. ROBINSON: How would it affect your impartiality or your ability to render an impartial decision in this matter if I told you

that Mr. Boulalas has a very active part in the events transpiring in regard to this dispute?

MR. NICHOLS: Mr. Robinson, I don't believe that this will interfere with my ability to evaluate the facts and the circumstances upon which this dispute is based. I think that in the past I have sat on other matters where principals are known to me and did not allow such degree of acquaintance to have interfered with my judgment.

So to answer your question, the answer is that this association of mine as described will in no way interfere with my ability to evaluate the matters of this case and determination accordingly.

Transcript at pp. 7–13.

7. The Second Circuit noted that "an arbitrator 'cannot be expected to provide the parties with his complete and unexpurgated business biography.'" *Andros v. Marc Rich*, 579 F.2d at 701 (quoting *Commonwealth Coatings*, 393 U.S. at 151, 340 (White, J., concurring)). In *Andros*, the court affirmed the arbitrators' award even though one arbitrator failed to disclose that he had served on nineteen arbitration panels with the president of one of the firms involved in the arbitration, and that in more than half of those arbitrations, he had actually been selected by the president.

the hearing. Although Amoco had no legal obligation to investigate Nichols' relationship to the petitioner, the information disclosed by Nichols at the hearing was sufficient to alert Amoco to the fact that certain overlapping relationships did exist.

Maritime law is a specialized area and the number of arbitrators in the field is limited. The fact that there is an overlap in the relations of the individuals involved does not in itself provide grounds for vacating an award. It is common practice for maritime arbitrators to participate in numerous maritime disputes. In fact, they often participate not only as arbitrators but also as parties and witnesses. *See Rosshavet*, 638 F.2d at 552; *Andros v. Marc Rich*, 579 F.2d at 701; *Garfield & Co. v. Wiest*, 432 F.2d 849, 853–54 (2d Cir.1970), *cert. denied*, 401 U.S. 940, 91 S.Ct. 939, 28 L.Ed.2d 220 (1971). Thus, the relationship between Nichols and Boulalis does not provide grounds for vacating the award under the "evident partiality" provision of the Arbitration Act.

For the reasons set forth above, Amoco's petition to vacate the award is denied, and Sofia's petition to confirm the award is granted.

So Ordered.