**TRANSIT CASUALTY COMPANY, et al., Plaintiffs,**

v.

**TRENWICK REINSURANCE CO., LTD., Defendant.**

86 Civ. 4281.

United States District Court, S.D. New York.

April 30, 1987.

Schwartz Klink & Schreiber, P.C., New York City (Charles Moxley, of counsel), and O'Doherty Gallagher & Nead, Baltimore, Md. (Patrick A. O'Doherty, of counsel), for plaintiffs.

Baker & McKenzie, New York City, for defendant, Robert B. Davidson, of Counsel.

ROBERT J. WARD, District Judge.

Plaintiff Transit Casualty Company ("Transit") is a Missouri insurance corpora-

tion, presently in receivership.[1] Defendant Trenwick Reinsurance Company, Ltd. ("Trenwick") is a Bermuda corporation that does business through Trenwick America Reinsurance Corporation, an affiliated corporation with offices at 111 Fulton Street, New York City. Trenwick reinsures the excess risk on primary insurance policies. On March 3, 1986, an arbitration panel entered an award in favor of Trenwick denying liability on a contract of reinsurance between Transit and Trenwick. Transit then filed this action to seek judicial review of the award. Trenwick has moved for an order confirming the award. Transit has cross-moved for an order vacating the award. For the reasons below, the Court grants Trenwick's motion to confirm the award and denies Transit's cross-motion.

## BACKGROUND

In March of 1982, Transit insured Florida Auto Rental Inc., a Miami car rental company, as primary insurer under policy CA95317 for $5 million for each covered automobile accident, combined single limit, for the period March 1, 1982 to March 1, 1983. Transit retained the first $1 million of the risk and sought to reinsure the $4 million dollar excess above $1 million. Transit retained David Delaney, of Delaney Offices Incorporated, as an intermediary to place the excess risk. Delaney placed the first $1 million of the excess risk with the Insurance Company of Maryland, a wholly-owned Transit subsidiary. Delaney then reinsured the $3 million excess over $2 million with Trenwick under a reinsurance certificate numbered 00514A. Although Transit's policy with Florida Auto Rental began on March 1, 1982, Delaney did not place the $3 million excess of $2 million coverage with Trenwick until mid-March of 1982. Trenwick's underwriter backdated the coverage subject to no known or reported losses. The notice of occurrence provision of the reinsurance contract required

prompt notice to the reinsurer when, in Transit's judgment, the value of the injuries and damages sought might result in a judgment sufficient to pierce the reinsurance layer. The notice provision also contained an absolute clause requiring prompt notice if and when Transit created a loss reserve equal to or greater than $1 million.

On March 3, 1982, an automobile rented by Florida Auto Rental to Barbara Camejo caused a serious accident in Miami that resulted in one injury and one fatality. Transit settled the suit by Barrera, the injured party, after four days of trial for $1 million. On January 10, 1984, Transit advised Delaney Offices, Inc. that the Barrera case had been settled for $1 million, which was $550,000.00 in excess of the case reserve. The same letter contained notice that counsel for Navarro, the death case, was demanding $1 million to settle the case and that Transit had counter-offered considerably less.

After Trenwick received the January 1984 notice, the company began to monitor the *Navarro* fatality suit. According to Trenwick, Delaney's office failed to keep Trenwick apprised of the progress of that suit or even to notify Trenwick of the trial date. Trenwick did not participate in the *Navarro* trial. The jury returned a verdict of $3.6 million which was later reduced to $3.25 million. Allegedly unbeknownst to Trenwick, Transit's counsel had refused the offer of settlement for $1 million.

Following the *Navarro* verdict, Transit made demand upon Trenwick for $2.25 million plus certain costs and interest.[2] In a letter dated December 3, 1984, Trenwick refused the demand, contending that Transit had breached certain paragraphs in the certificate of reinsurance by failing to notify Trenwick promptly of the accident and by failing to afford Trenwick its right to associate and participate jointly with Transit in defense of and settlement of the

---

1. By order dated December 13, 1985, Judge Kinder, Judge of the Circuit Court of Cole County, Missouri expressly approved the prosecution of the arbitration proceeding at issue in this suit. The present action by Transit falls within the scope of that order.

2. The amount is computed by adding the $1 million paid to Barrera to the $3.25 million verdict and subtracting the $2 million retention to be paid by Transit and the Insurance Company of Maryland.

cases arising out of the action. Defendant's Notice of Motion to Confirm Arbitration Award, Affidavit of Robert B. Davidson Ex. 5 (sworn to October 3, 1986).

When the parties could not resolve the dispute amicably, Trenwick commenced arbitration proceedings. Trenwick appointed Thomas D. Crittenden as its party-appointed arbitrator. Transit appointed Edward J. Birrane, Jr. as its party-appointed arbitrator. Crittenden and Birrane agreed upon the appointment of Arthur E. Fanning as the neutral arbitrator.

Supposedly after the creation of the panel Trenwick discovered that Delaney had not placed the $3 million excess reinsurance with Trenwick until well after the date of the accident on March 3, 1982. Trenwick therefore added this defense to its case. Transit objected to this late addition of another defense and raised the issue before the panel the first day of hearings on September 12, 1985. That day, the panel issued, unanimously, a pre-hearing order specifying the issues to be decided.

4. The issues to be arbitrated are:

(a) Does Trenwick Insurance Company, Ltd. owe a duty to respond to Transit Casualty Company's demands for payment under the contract of reinsurance submitted to the panel?

(b) How fees and expenses of this arbitration, but excluding counsel fees, are to be allocated as between the Parties.

Davidson Affidavit Ex. 6. In accordance with the broad language of ¶ 4(a), the panel heard all of Trenwick's defenses, including the underwriting defense.

The panel conducted extensive proceedings. The parties presented eighteen live witnesses, the deposition testimony of one expert witness, and portions of the depositions of eight others. By decision dated March 3, 1986, a majority of the arbitrators found in favor of Trenwick, denying Transit's claims for payment and awarding Trenwick fees and expenses.[3] Transit's arbitrator submitted a proposed order finding for Transit that contained a discussion of the legal issues, citations, and an award in Transit's favor.[4]

Birrane later submitted a minority opinion dated April 14, 1986 because his "pleas for a reasoned opinion and order in this case ... were summarily ignored by the 'neutral' arbitrator." In this opinion Birrane charged that Fanning refused to recuse himself despite a financial interest in Trenwick and the fact that Crittenden, Trenwick's party arbitrator, had appointed him as a neutral arbitrator in a separate dispute. Birrane further elaborated and expanded his contention that the majority had erred on the law in reaching a decision in Trenwick's favor.

Transit then filed this suit to vacate the arbitration award essentially on the

---

**3.** The decision recounts the number of witnesses and the length of the hearings, but contains absolutely no analysis of the issues involved in the case. In its entirety, the decision holds:

> Subsequent to the formal hearings the undersigned arbitrators have reviewed all of the evidence, exhibits, and pleadings and DECIDE:
> 1. Transit Casualty Company is not entitled to recover from Trenwick Reinsurance Company, Ltd. for any part of the payments made by Transit as a result of the March 3, 1982 automobile accident involving Florida Auto Rental, Inc.'s leased vehicle.
> WHEREFORE, the undersigned arbitrators AWARD the following: ....

Davidson Aff. Ex. 1.

**4.** Specifically Birrane wrote that (i) Trenwick bore the burden of proving its defenses to payment under the reinsurance contract, (ii) California law applied to the case, (iii) the reinsur-

ance contract between Trenwick and Transit arose no later than March 16, 1982 subject to being backdated on the representation but not the warranty of Delaney the intermediary that no known or reported losses arose between March 1, 1982 and March 16, 1982, (iv) Delaney's representation that he knew of no reported losses on March 16, 1982 was not false inasmuch as Transit learned of the claim on March 17, 1982 when Crawford & Company, who had received notice on March 16, 1982, reported it and in any even Transit was not bound by the representation of Delaney made on March 16, 1982 because he was acting against Transit's interest, (v) Transit came under no obligation to report the accident to Trenwick until Transit reasonably estimated the loss might penetrate the reinsurance layer and this belief arose only once Transit settled the injury suit for $1 million in January of 1984, and (vi) Trenwick was not deprived of an opportunity to participate in the death action.

grounds that the majority was biased, that the arbitrators exceeded the scope of their authority, that the majority committed misconduct in taking evidence, and that the majority manifestly disregarded the law. Specifically, Transit contends that Fanning the neutral arbitrator was biased since he had a financial interest in the outcome of the proceeding and because Trenwick's party-arbitrator Crittenden had traded with him an appointment to another arbitration panel. Trenwick cross-moved to confirm the arbitration award. The Court heard oral argument April 24, 1987 and reserved decision on the motions.

## DISCUSSION

### A. Arbitrability.

■■■ Arbitrability is purely a matter of contract. Before ordering the parties to proceed to arbitration or in confirming an arbitration award, the court must satisfy itself that the making of the agreement to arbitrate is not in issue. 9 U.S.C. § 4. *See Tehran-Berkeley Civil and Environmental Engineers v. Tippetts-Abbett-McCarthy-Stratton*, 816 F.2d 864 (2d Cir.1987). In passing the Federal arbitration Act (the "Arbitration Act"), Congress intended to establish a uniform federal law governing contracts falling within its scope. The Court therefore must apply federal contract law in construing and enforcing an arbitration provision. *Goodwin v. Elkins & Co.*, 730 F.2d 99, 108 (3rd Cir.1984); *S.A. Mineracao Trindade-Samitri v. Utah Int'l. Inc.*, 576 F.Supp. 566, 569 (S.D.N.Y. 1983). "[O]rdinary principles of contract and agency determine which parties are bound by an agreement to arbitrate." *McAllister Bros' Inc. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir.1980).

■■■ Transit seemingly questions the authority of the arbitrators to hear this dispute. Paragraph K of the reinsurance contract between Transit and Trenwick, however, specifically provides for arbitration. ARBITRATION. Any difference of opinion between the Reinsurer and the Company with respect to the interpretation of this certificate or the performance of the obligations under the certificate shall be submitted to arbitration. Each party shall select an arbitrator within thirty (30) days after written request for arbitration has been received from the party requesting arbitration. If either party refuses or neglects to appoint an arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators. The two arbitrators shall select a third arbitrator within ten (10) days after both have been appointed. Should the arbitrators fail to agree on a third arbitrator, then the third arbitrator shall be selected pursuant to the Commercial Arbitration Rules of the American Arbitration Association. The arbitrators shall be officials or former officials of other insurance or reinsurance companies. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The arbitration proceedings are to be governed by the Rules of the American Arbitration Association and the New York State Arbitration Law.

At oral argument, Transit's counsel declined the Court's invitation to elaborate this argument, stating that she preferred to rest on the submissions. The Court is hard pressed to see how Transit could make the argument that Trenwick lost its right to arbitrate by denying liability under the reinsurance contract when paragraph K of the reinsurance contract expressly provides that differences of opinion concerning "performance of the obligations under the certificate" are arbitrable at either party's behest. The dispute was lawfully and properly submitted to arbitration.

### B. Grounds to Vacate the Arbitration Award.

■■■ The Arbitration Act provides that only a mutual, final, and definite award is subject to confirmation. 9 U.S.C. § 10. The standard of review for such an award is extremely narrow. *See United States Steel and Carnegie Pension Fund v. Dickinson*, 753 F.2d 250, 252–53 (2d Cir.1985). Courts may vacate an arbitration award

only upon a showing of one of the statutory grounds listed in the Arbitration Act, 9 U.S.C. § 10, if the arbitrators acted in manifest disregard of the law, *see Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953); *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 636 F.Supp. 444, 445 (S.D.N.Y.1986), or if the award is incomplete, ambiguous, or contradictory, *Bell Aerospace Co. Div. of Textron v. Local 516*, 500 F.2d 921, 923 (2d Cir.1974).[5] Both the statutory and judicially created exceptions to confirmation are strictly limited so as not to frustrate the basic purpose of arbitration to dispose of disputes quickly and to avoid the expense and delay of protracted court proceedings. The burden of proof rests squarely on Transit as the party attempting to vacate the arbitration award. *See Andros Compania Maritima v. Marc Rich & Co., A.G.*, 579 F.2d 691, 700 (2d Cir.1978). The Court will consider in turn Transit's contentions that the majority was biased, that the panel exceeded its authority, and that the majority manifestly disregarded the law in reaching its determination.

1. Bias.

Transit contends that Fanning was biased in his consideration of the dispute by virtue of a financial interest in Trenwick and because Trenwick's party-arbitrator had appointed Fanning to serve as the neutral arbitrator in another arbitration, in effect that the two "swapped judgeships," both of which he failed to disclose to Transit. Transit further argues that Fanning exhibited his bias in several remarks concerning a former president of Transit, by refusing to accept submissions made by Transit, and by refusing to place the contents of certain discussions held between the panel members on the record.

While addressing the "requirements of impartiality," the Supreme Court in *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), held that arbitrators must "disclose to the parties any dealings that might create an impression of possible bias." 393 U.S. at 149, 89 S.Ct. at 339. Justice Black's plurality opinion relied heavily upon the similarity of arbitrators to judges and juries to decide that courts should "scrupulously" safeguard the impartiality of arbitrators. Justice White, recognizing that arbitrators most often are men of affairs not apart from the marketplace, emphasized that "arbitrators are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial." 393 U.S. at 150, 89 S.Ct. at 340. He went on to suggest that "[t]he judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality. That role is best consigned to the parties who are the architects of their own arbitration process, and are far better informed of the prevailing ethical standards and reputations within their business." 393 U.S. at 151, 89 S.Ct. at 340. Justices Fortas, Harlan, and Stewart in dissent, criticized the Court for announcing a *per se* rule and underlined Congress' intent in passing the Arbitration Act "to protect the integrity of the process with a minimum of insistence upon set formulae and rules." 393 U.S. at 155, 89 S.Ct. at 342.

In *Andros Compania Maritima v. Marc Rich & Co., A.G., supra,* 579 F.2d at 699, the Second Circuit reconciled the Court's "diverse views" as presenting the common feature that "[d]isclosure by arbitrators should be encouraged; failure to make appropriate disclosure will justify setting aside an award." After surveying cases decided by the Second Circuit since *Commonwealth Coatings* the panel noted, however, that "[i]t is certainly fair to say that we have not been quick to set aside the results of an arbitration because of an arbitrator's alleged failure to disclose information." 579 F.2d at 700. Turning to the case before it, the court took up Marc Rich's allegations that Mr. Arnold, a member of the arbitration panel, had had a close personal and professional relationship with

---

**5.** Although the grounds of irrationality and manifest disregard of the law seemingly spring from different sources, cases discuss the points interchangeably.

Mr. Nelson, the president of a firm that allegedly operated the vessel involved in the arbitration. The primary basis of the claimed close relationship was that Arnold and Nelson and served together on nineteen arbitration panels and that in twelve of those arbitrations Nelson was one of the arbitrators who had selected Arnold. Nelson and Arnold swore that they had no business relationships and had never so much as visited each other's homes. In light of Nelson's and Arnold's social and professional disavowals, the panel next considered Marc Rich's contentions that the relationship should have been disclosed because most of Arnold's appointments were attributable to Nelson and because Arnold consistently voted for Nelson's side in those disputes. Perhaps because most of the panels on which Nelson and Arnold served voted unanimously, the panel did "not regard this as the sort of information an arbitrator would reasonably regard as creating an impression of possible bias." 579 F.2d at 701.[6]

A subsequent panel of the Second Circuit stressed that the impression of bias sufficient to meet the statutory standard of evident partiality differs from appearance of bias or mere speculation concerning possible bias.

> Mindful of the trade-off between expertise and impartiality, and cognizant of the voluntary nature of submitting to arbitration, we read Section 10(b) as requiring a showing of something more than the mere "appearance of bias" to vacate an arbitration award.
>
> * * * * * *
>
> If the standard of "appearance of bias" is too low for the invocation of

Section 10, and "proof of actual bias" too high, with what are we left? Profoundly aware of the competing forces that have already been discussed, we hold that "evident partiality" within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. In assessing a given relationship, courts must remain cognizant of peculiar commercial practices and factual variances. Thus the small size and population of an industry might require a relaxation of judicial scrutiny, while a totally unnecessary relationship between arbitrator and party may heighten it.

*Morelite Constr. Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 83–84 (2d Cir.1984); *see International Produce Inc. v. A/S Rosshavet*, 638 F.2d 548, 550–51 (2d Cir. 1981). The panel vacated the arbitration award before it because the son of a union president had sat on the panel in a dispute involving his father's union. *Id.*

In other cases within the Second Circuit, to vacate an arbitration award for bias, courts have required that the arbitrator must have failed to disclose (i) a direct financial relationship with one of the parties or (ii) a relationship with one of the parties which would raise a very obvious question of propriety, as in the case of a son sitting on a father's petition. *See Sofia Shipping Co. Ltd. v. Amoco Transport Co.*, 628 F.Supp. 116 (S.D.N.Y.1986) (allegations of bias that involve mere speculation raising at most an appearance of bias do not suffice to vacate an award); *UCO Terminal, Inc., v. Apex Oil Co.*, 583 F.Supp. 1213, 1215 (S.D.N.Y.1984) (to vacate an award petitioner must suggest dealings

---

**6.** In a later opinion, the Second Circuit elaborated that the Supreme Court in *Commonwealth Coatings* did not expand the section 10 standard of "evident partiality" to include "appearance of bias." *International Produce Inc. v. A/S Rosshavet*, 638 F.2d 548, 551 (2d Cir.1981). The panel went on to comment:

> It is not unusual that those who are selected as arbitrators in maritime arbitrations have had numerous prior dealings with one or more of the parties or their counsel. Cederholm's extensive involvement in the maritime community was not unique; both of the other

arbitrators revealed past dealings with one of the parties. Arbitrator Klosty aptly analogized New York's maritime-arbitration community to a busy harbor, where the wakes of the members often cross.

*Id.* The Second Circuit proceeded to turn back a challenge based upon the appearance of bias created by one of the arbitrator's relationship with two law firms when he testified as a witness in one proceeding involving the two firms and participated as an arbitrator in the second proceeding involving both law firms.

"not in the ordinary course of ... business," involving an "interest of bias ... [that] must be direct, definite, and capable of demonstration rather than remote, uncertain, or speculative"); *Transmarine Seaways Corp. v. Marc Rich & Co., A.G.,* 480 F.Supp. 352 (S.D.N.Y.1979) (reading *Commonwealth Coatings* as focusing upon the failure to disclose a direct income-producing relationship between an arbitrator and a party). *Cf. International Produce, Inc. v. A/S Rosshavet, supra,* 638 F.2d 548 (reversing district court's determination that arbitration award should be vacated because one of the arbitrator's relationships with law firms representing the parties created an "appearance of bias"). With the foregoing background, the Court will consider whether the allegations of bias alleged by Transit against Fanning, considered in whole, warrant vacating the arbitration award.

a. Financial Interest.

■ Transit alleges that Fanning had a financial interest in the outcome of the arbitration because he owned stock in Cigna Corporation which has an equity interest in Trenwick, but failed to disclose that fact to the parties. Fanning asserts that he failed to disclose this interest at the beginning of the arbitration because he was not aware of the relationship between Cigna and Trenwick. Cigna has over 100 subsidiaries. Davidson Aff. Ex. Ex. 8. One of those subsidiaries, Cigna Holdings, owns 100% of the Aetna Insurance Corporation ("Aetna"). Aetna in turn owned at the time of the arbitration 7.6% of the shares of Trenwick's parent company. *Id.* ¶¶ 21–26. Although Fanning did not disclose this interest in Trenwick, it is clearly trivial and carries with it no reasonable suggestion that Fanning would be biased against Transit.[7]

b. Fanning's Contemporaneous Service With Crittenden On Another Panel.

■ After the arbitration proceeding in this case began, Fanning and Crittenden served together on another panel. As stated at oral argument, Transit relies principally on its intimation that Fanning, the party-arbitrator in that dispute, and Crittenden traded influence in the respective cases to sustain its contention that the majority was biased against it. The association alleged here, however, is precisely the sort that the Second Circuit has observed may *not* serve as a basis for a finding of bias lest disgruntled parties gain a pretext for tardy challenges to an award.

At the outset, the Court rejects Transit's suggestion that it be allowed to depose Fanning and Crittenden to determine the extent of their relationship. Although it had ample opportunity to conduct an investigation into the background of the arbitrators prior to or during the arbitration, Transit alleges only this single instance that Fanning and Crittenden served together. Courts will not encourage parties to conduct post-arbitration investigations into the background of the arbitrators on the hope of uncovering evidence of some undisclosed fact. Here Transit first objected to Fanning's background near the end of the hearings on the basis of the rather slim reeds that Fanning had an infinitesimal interest in the outcome of the proceeding and the speculation that he and Crittenden were trading influence.

Nothing before the Court indicates that Fanning's relationship with Crittenden was anything other than professional. Transit's expert witness Mr. Brandes testified at a deposition that he was unsure whether Fanning or the other party-arbitrator in that dispute selected Crittenden. Brandes further stated that he had "nothing but the utmost respect for both of them." Davidson Aff. Ex. 14. In addition, counsel at oral argument both agreed that the num-

---

7. Transit suggests at numerous points that Fanning and Crittenden failed to meet the disclosure obligations of the American Arbitration Association ("AAA"). Whatever the merits of Transit's contentions concerning those guidelines, a federal court may overturn an arbitra-tion award only if the moving party proves one of the grounds enumerated in the Arbitration Act or shows that the panel manifestly disregarded the law. At the outside, were the violations of AAA guidelines clearcut, they might be relevant to issues of misconduct.

ber of qualified arbitrators available to sit on insurance arbitration disputes is quite small and that arbitrators often sit together on a number of disputes. Absent any concrete basis for suggesting impropriety, the Second Circuit decision in *Andros Compania Maritima v. Marc Rich & Co., A.G., supra,* 579 F.2d at 702, where the rejected challenge was based on the fact that an arbitrator and one of the parties involved had served together on nineteen panels, governs this point. Under the circumstances, Fanning's service with Crittenden would not lead a reasonable person to believe that he would be evidently partial to Trenwick.

### c. Other Acts.

Aside from the financial and professional conflicts, Transit alleges that Fanning exhibited his bias by making comments to the other arbitrators concerning the evidence,[8] refusing to accept a "Transit Reply Brief" when he had accepted a similar submission made by Trenwick, and failing to place on the record the substance of a conversation between the arbitrators concerning a letter written to the arbitrators by Mr. Birrane. The Court will address Fanning's alleged refusal to take one of Transit's submissions along with the other allegations of misconduct under section 10 of the Arbitration Act.

 Fanning's gratuitous comments about Transit's former President might be unfortunate, but they do not evince evident partiality. Transit has cited no authority, and the Court is aware of none, that arbitrators are under an obligation to place their deliberations on the record. In sum, there is no evidence that Fanning was biased or prejudiced, that he was predisposed

to favor either party, or that he acted out of any improper motives.

### 2. Misconduct.

 Under section 10(c) of the Arbitration Act, the Court may vacate an award where the panel or one of its members is guilty of misconduct.[9] The misconduct must amount to a denial of fundamental fairness of the arbitration proceeding in order to warrant vacating the award. *Reichman v. Creative Real Estate Consultants, Inc.,* 476 F.Supp. 1276, 1285 (S.D.N.Y.1979). Transit contends that Fanning refused to receive a Transit submission and that the panel accepted tampered evidence.

 Although the circumstances of the alleged refusal did not appear clearly from the briefs, counsel at oral argument explained that Transit had submitted a tardy commentary in the form of a letter to its party-arbitrator once the hearings had begun. Even assuming arguendo that Fanning was not justified in refusing the submission, Transit was not prejudiced inasmuch as both parties submitted comprehensive briefs covering all the relevant issues at the conclusion of the hearings. Transit's other evidentiary objection is equally unavailing. Accepting evidence at the hearings falls within the ample discretion allowed the arbitration panel. It is not for this Court to second-guess their decision on the authenticity of exhibits.

### 3. Manifest Disregard of the Law.

 Finally, Transit contends that the majority of the panel disregarded applicable law in reaching its determination. Precisely what constitutes manifest disregard of the law is not yet clear, but it requires "something beyond and different from a mere error in the law or failure on the part

---

**8.** According to Transit, Fanning defamed Transit and Delaney by describing the relationship between the insurance company and its affiliated intermediary as "incestuous." Fanning supposedly compounded his offense by inquiring whether Transit's former president, chairman and general counsel had yet been picked up by the sheriff.

**9.** Section 10 provides that the district court may vacate an arbitration award

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

9 U.S.C. § 10.

of the arbitrators to understand or apply the law." *Drayer v. Krasner*, 572 F.2d 348, 352 (2d Cir.) (quoting *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir.1961)), *cert. denied*, 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978). That the arbitrators erroneously decided the facts or erroneously applied the law does not suffice. *Siegel v. Titan Industrial Corp.*, 779 F.2d 891, 892–93 (2d Cir.1985). Rather the arbitrators must have "understood and correctly stated the law but proceeded to ignore it." *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516*, 356 F.Supp. 354, 356 (W.D.N.Y.1973), *rev'd on other grounds*, 500 F.2d 921 (2d Cir.1974).

 Transit's various contentions reduce to the argument that by refusing to provide a reasoned, legal, analysis, the majority demonstrated that they disregarded what they knew to be the law.[10] Nonetheless, it is well settled that an arbitrator need not provide a reasoned analysis, or any analysis at all for reaching its conclusion. *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953). The briefs submitted by both sides covered the issues of when the contract of reinsurance was formed, Transit's disclosure obligations based on Delaney's representations, burdens of proof, applicable law, notification requirements, opportunities to participate in trying the accident cases, and waiver of defenses. At base, Transit simply disagrees with the legal and factual conclusions reached by the panel. By no means, however, does Transit's disagreement establish any of the statutory grounds for vacating an award or that the panel manifestly disregarded the law.

**CONCLUSION**

The arbitration panel had authority to consider and decide this dispute. Neither Fanning's stock holdings in Cigna Corporation nor his service with Crittenden on another arbitration panel during the pendency of the arbitration proceeding at issue evinces an evident partiality for Trenwick that would warrant vacating the award on the basis of bias. The panel did not commit misconduct either by refusing to receive an untimely submission by Transit or by receiving in evidence an exhibit that allegedly had been tampered with. Finally, the majority did not manifestly disregard the applicable law in reaching its decision in favor in Trenwick. Accordingly, the Court grants Trenwick's motion to confirm the arbitration award and denies Transit's cross-motion to vacate the award.

Settle judgment on notice.

---

10. The argument headings of Transit's brief provide a brief synopsis of their contentions.
 * The majority disregarded the contractual provisions of the reinsurance certificate and failed to adhere to its terms.
 * The majority, despite their agreement and the parties' agreement to decide the case on the law, refused to consider issues raised by the parties concerning the allocation of proof and choice of substantive law to control the dispute.

* The majority further refused to follow accepted principles of contract law, insurance law, agency law, as well as the law of representations, admissions, and the law of constructive notice.
Plaintiff's Answering Memorandum in Opposition to Motion to Confirm and in Support of Petition to Vacate Arbitration Award at (i).