**CATZ AMERICAN CO., Inc., Petitioner,**

v.

**PEARL GRANGE FRUIT EXCHANGE, INC., Respondent.**

No. 68 Civ. 1010.

United States District Court
S. D. New York.

Sept. 30, 1968.

Katz & Sommerich, New York City, for petitioner.

Delson & Gordon, New York City, for respondent.

MANSFIELD, District Judge.

Petitioner has moved to confirm, and respondent to vacate, an arbitration award. The background of the proceeding is as follows:

On March 6, 1968 Pearl Grange Fruit Exchange, Inc. (hereinafter "Pearl"), a Michigan corporation, invoked the New York Supreme Court in a proceeding

against Catz American Co., Inc. (hereinafter "Catz"), a New York corporation, to stay arbitration of a dispute between them. On March 11, 1968 Catz removed the proceeding to this Court and petitioned, pursuant to § 4 of the Federal Arbitration Act (9 U.S.C. § 4), for an order to compel arbitration. Pearl cross-moved to stay arbitration, arguing that it never entered into an arbitration agreement. The motions were heard by Judge Tyler, who granted Catz's motion and ordered Pearl to submit to arbitration. The Court of Appeals refused to stay Judge Tyler's order or the pending arbitration.

The matter was arbitrated, as provided by the three contracts in question, by the Association of Food Distributors, Inc. and on July 9, 1968 the arbitrators found in favor of Catz on all three contracts and awarded Catz a total of $93,759.87.

Catz has now moved for an order, pursuant to §§ 9 and 13 of the Federal Arbitration Act (9 U.S.C. §§ 9, 13), confirming the arbitrators' award and directing entry of a judgment based on that award. Pearl opposes and requests that the arbitrators' award be vacated pursuant to § 10 of the Federal Arbitration Act (9 U.S.C. § 10), and that there be a rehearing before the American Arbitration Association or other arbitrators appointed by the Court.

 In view of the existence of an underlying controversy concerning interstate commerce these motions are properly brought under the Federal Arbitration Act and must be resolved in accordance with the provisions of that Act. See, Prima Paint Corp. v. Flood & Conklin, 388 U.S. 395, 404–405, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1966). A separate motion by Pearl to vacate the arbitrators' award is not necessary. Such relief may properly be requested in the papers submitted in opposition to a motion to confirm an arbitrators' award. The Hartbridge, 57 F.2d 672 (2d Cir.1932). Further, Pearl's application is timely. Despite its prior knowledge of some of the grounds now claimed to indicate "evi-

dent partiality," it could not properly have brought the issue of partiality before this Court until after the arbitration and rendition of the award. Petition of Dover Steamship Company, 143 F.Supp. 738, 742 (S.D.N.Y.1956).

 In affidavits opposing Catz's motion, Pearl attempts to reargue the facts that were before the arbitrators. As the merits of the controversy submitted to arbitration cannot be reopened before this Court, see, James Richardson & Sons v. W. E. Hedger Transp. Corp. 98 F.2d 55, 57 (2d Cir.1938); Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F.2d 577 (2d Cir. 1967), we only review Pearl's claims that it was not accorded a fair and impartial arbitration. Five such claims are asserted. In reviewing them we recognize that since one of the fundamental purposes of resorting to arbitration is, through use of informal proceedings, to reduce the cost and delay frequently encountered in the courts, our role must be a limited one if it is not to frustrate that objective, see, Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805 (2d Cir.1960), cert. denied, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1959), so that an arbitration award should be upset only "with great hesitation," see Karppinen, et al. v. Karl Kiefer Machine Co., 187 F.2d 32, 34 (2d Cir.1951), and then only where the party attacking it clearly establishes one of the grounds specified in § 10. After reviewing the papers presented by the parties, we find that the claims asserted by Pearl are not sufficiently supported to justify vacating the award.

CLAIM OF "EVIDENT PARTIALITY"

 The major thrust of Pearl's objections is that there was "evident partiality" on the part of the arbitrators toward Catz, a ground for vacation of an award specified in § 10 of the Arbitration Act, 9 U.S.C. § 10. When such a claim is made, the court must ascertain from such record as is available whether the arbitrators' conduct was so biased

and prejudiced as to destroy fundamental fairness. "The burden of proof on this issue in the confirmation proceedings in the district court rests upon the party making the claim." Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F.2d 577, 582 (2d Cir. 1967). Something more than "mere error in the law or failure on the part of the arbitrators to understand or apply the law" must be shown. San Martine Compania de Navegation, S. A. v. Saguenay Terminals, Ltd., 293 F.2d 796 (9th Cir.1961).

Since no record was made of the arbitration proceeding, Pearl's claim of bias rests upon the affidavits of its President and counsel, containing conclusions and characterizations of the type frequently voiced by disappointed litigants, which are sharply controverted by opposing affidavits filed on behalf of Catz. Such a meager, conflicting, and inconclusive record, which of necessity results from the very informality inherent in arbitration proceedings, illustrates why the Court must be reluctant to vacate an award in the absence of clear and convincing evidence.

■ Pearl first points to the conduct of one of the arbitrators, Mr. Morris Schwartz, who was substituted for another designee (as permitted by the Association's rules) on the day of arbitration. At the beginning of the proceedings Mr. Schwartz commented that he did not approve of attempts to stay arbitration by recourse to the courts, a remark characterized by the Executive Director of the Association, to whom Pearl directed its objection, as a "general comment, not affecting this case." Pearl, possibly because it decided the remark not sufficiently prejudicial to warrant further action, chose not to exercise its right to challenge Schwartz's appointment as an arbitrator under § IV(3) of the Arbitration Rules of the Association of Food Distributors, Inc., which permits a party one challenge without cause and unlimited challenges for cause. But even if this waiver is disregarded, Schwartz's comment does

not rise to the level of "evident partiality" requiring vacation of the award. Nor are Pearl's contentions that Schwartz's questions, interjections and summaries during the course of the hearing showed a disposition in favor of petitioner to the point where he seemed like an advocate for Catz, sufficiently supported to demonstrate such a degree of partiality. In refusing to vacate an award on similar charges, our Court of Appeals, in Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17 (2d Cir.1962), stated:

"A judge is not wholly at the mercy of counsel, and would be remiss if he did not participate in questioning to speed proceedings and eliminate irrelevancies. [Citations omitted] A fortiori an arbitrator should act affirmatively to simplify and expedite the proceedings before him, since among the virtues of arbitration which presumably have moved the parties to agree upon it are speed and informality." (p. 21)

Pearl next points, as evidence of bias, to the fact that Catz's president is a member of the Board of Directors of the Association that conducted the arbitration, and an obvious business and social friend of all the arbitrators, which Catz does not dispute. The simple answer is that Pearl agreed to arbitration according to the Association's rules, which involved selection of arbitrators from lists of its members.

■ When an arbitrator is not appointed by the method provided in the arbitration agreement and is found to have a business relationship with one of the parties, vacation of the arbitrators' award as being inherently partial is justified. See, American Guaranty Co. v. Caldwell, 72 F.2d 209 (9th Cir.1934). Here, however, Pearl did not object to the method of appointment of any of the arbitrators nor did it, at the time of the arbitration, challenge any of the arbitrators even though it knew that Catz and the arbitrators had "close personal relations." It may be that Pearl considered such objections futile because of Catz's

continuing relationship with the Association and Pearl's position as an outsider. But we cannot, because of Pearl's belated post-award belief that the Association could not be impartial, ignore the arbitration agreement between the parties, which specifically provided that any disputes "shall be settled by arbitration in New York, New York, by the Association of Food Distributors, Inc. * * *" In Kulukundis Shipping Co. S/A v. Amtorg Trading Corp., 126 F.2d 978, 985 (2d Cir.1943), the Court noted:

"The report of the House Committee stated, in part: 'Arbitration agreements are purely matters of contract, and the effect of the bill is simply to make the contracting party live up to his agreement. He can no longer refuse to perform his contract when it becomes disadvantageous to him. An arbitration agreement is placed upon the same footing as other contracts, where it belongs. * * *'"

See, Modern Brokerage Corp. v. Massachusetts B. & I. Co., 56 F.Supp. 696 (S. D.N.Y.1944) (court refused to change terms of contract which appointed an individual as arbitrator which individual, the plaintiff and author of the contract, claimed would not be impartial because he, as an employee of plaintiff, previously approved the payments which became the subject of the arbitration).

## CLAIM OF REFUSAL TO HEAR EVIDENCE

Pearl next urges, as a ground for vacating the award, that the arbitrators did not hear the testimony of the officers of Imperial Food Co., Inc. (hereinafter "Imperial"), Catz's alleged broker for the contracts in question. Catz offered to bring these parties before the arbitration panel but the panel reserved decision as to whether Imperial's testimony was necessary and never did call for their production. It does not appear, on the other hand, that Pearl requested Catz to produce Imperial. If Pearl believed Imperial's testimony to be relevant or essential, it could have requested the arbitrators to summon Im-

perial by exercising their powers pursuant to 9 U.S.C. § 7, which it did not do, with the result that its real objection now is that Catz should have produced Imperial regardless of the arbitrators' decision in the matter.

Arbitrators must be given discretion to determine whether additional evidence is necessary or would simply prolong the proceedings. See, Ballantine Books, Inc. v. Capital Distributing, 302 F.2d 17 (2d Cir.1962) (and quotation from p. 21 of that case set out supra, p. 552). Respondent's citation of Hyman v. Pottsberg's Ex'rs, 101 F.2d 262, 265 (2d Cir.1939), in support of its proposition is inapposite, for the reason that it dealt with failure to adduce evidence solely within the control of one of several claimants in support of unopposed claims. Here the testimony was not solely within Catz's control and there was other evidence in opposition. The arbitrators' decision should not be considered "refusing to hear evidence pertinent and material to the controversy" for the purposes of vacating an award under 9 U.S.C. § 10(c).

## ALLEGED MISBEHAVIOR OF THE ARBITRATORS

Pearl further argues that the arbitrators were guilty of misconduct because they did not permit Mr. Schrier, its President, to complete his testimony and present all of his evidence. Catz replies that the arbitrators did not cut off Schrier's testimony; rather that the testimony was so confusing and unresponsive to his attorney's questions that the latter was permitted to summarize it. Apparently the attorney was allowed ample time to do so, in addition to which the arbitrators granted Schrier's request for additional time in which to submit further evidence. On this record we cannot presume that there was any misbehavior on the arbitrators' part in seeking to rid the proceeding of formalities and expedite it in line with the very aims of the arbitration process. See, *Ballantine Books, Inc.*, supra.

## CLAIM THAT AWARD WAS PROCURED BY UNDUE MEANS

 Pearl's final contention relates to the introduction into the proceedings of Judge Tyler's opinion ordering arbitration upon finding that there was a valid agreement to arbitrate. Pearl argues that the laymen arbitrators must have been unduly influenced by Judge Tyler's conclusion that its defenses to the validity of the arbitration agreement were "insubstantial" and a "sham," and led to believe that such characterizations applied to all of Pearl's defenses.

While the arbitrators themselves may have been laymen, Catz's reply affidavit points out that the hearing supervisor, Mr. Bruce, was a lawyer familiar with arbitration proceedings and present to guide the arbitrators. Further, while Catz was not represented by a lawyer, Pearl did appear by counsel presumably able to point out the appropriate limits of Judge Tyler's opinion to the arbitrators. In view of the lack of proof of actual undue influence, we cannot sustain Pearl's contention that the introduction of this opinion was "undue means" (9 U.S.C. § 10) unless we are willing to hold that judicial opinions enforcing arbitration agreements may never properly be introduced into arbitration hearings. Such a rule would be inconsistent with the wide latitude allowed to arbitrators, who are not bound by the rules of evidence, in receiving relevant papers. There is no reason why arbitrators must ignore relevant judicial decisions in reaching a decision, whether or not they are considered in the nature of expert opinions. Judge Tyler's decision explored respondent's defenses relating to the alleged fraudulent means of procuring the signature on the arbitration agreement, the signature's authenticity, and the authority of the individual signing to bind the corporation. As the arbitration agreement was part of the same document that evidenced the contracts in question and one signature at the bottom of each document operated to accept the contract and its terms, including the arbitration agreement, there was nothing improper in citing it as some authority (or proof, if you will) for the proposition that the contracts were valid and binding upon Pearl.

For the foregoing reasons respondent's motion to vacate the arbitrators' award is denied and, accordingly, petitioner's motion for an order confirming the award and directing entry of judgment is granted.

So ordered.