This is an appeal from a judgment of the Circuit Court of Shelby County confirming an arbitration award.
The record reveals the following: Maxus, Inc., d/b/a Maxus Construction Company ("Maxus") entered into a written cost-plus contract dated May 11, 1988, with Robert and Roseann Sciacca for the construction of a residence for the Sciaccas. The contract was prepared using the American Institute of Architects ("AIA") standard forms. Included in the contract was a provision for arbitration as a means to settle controversies and claims arising out of, or related to, the contract or to a breach of the contract.
 "4.5.1 Controversies and Claims Subject to Arbitration. Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction thereof. . . ."
The performance of the work pursuant to the contract involved approximately 50 subcontractors, in addition to the work performed by Maxus's own forces. The contract involved the purchasing and installing of thousands of pieces of materials and equipment manufactured in, and procured from, many different states and foreign countries. These materials were shipped by common and other carriers across state lines into Alabama and were ordered, followed up, and paid for by using the U.S. mails, telephones, and interstate financial transaction settlement procedures and institutions. The escrow funds were held, paid out, and invested by a national banking association using the U.S. mails, telephones, and interstate financial transaction settlement procedures and institutions.
Construction on the residence began in June 1988. In 1989, a controversy arose between the parties concerning the increase in costs of the project. After paying in full 14 detailed, monthly billings, aggregating in excess of $1,000,000, the *Page 1378 
Sciaccas found fault with particular cost items for which they had been billed, and withheld part of the 15th payment to Maxus. The Sciaccas withheld amounts concerned with costs they had been charged for rental items on the job, costs for repair or replacement of certain items of materials and work, as well as with the entitlement of Maxus to a contractor's fee on certain items of work. The Sciaccas stated that they were going to place any future objectionable rental charges and certain other overages into an escrow account until the entitlement to the sums could be determined.
Because of this disagreement concerning the billing disputes, the parties entered into an escrow agreement in September 1989. This agreement provided that a certain sum of money would be deposited into an escrow account. Undisputed portions of Maxus's monthly billings would be paid from the escrow, and any amounts in dispute would remain in escrow until a determination was made by an award in arbitration under the original contract. The agreement further provided that all parties should "assert any and all other arbitrable claims arising under the Contract."
This agreement, dated September 29, 1989, would allow work on the construction project to continue and permit Maxus to be paid. Pursuant to the agreement, SouthTrust Bank of Alabama, N.A. ("SouthTrust"), was to hold and disburse $312,000 deposited by the Sciaccas and estimated by Maxus to be required for its completion of the project.
Maxus continued with the construction work on the residence and brought the work to what it thought was a successful conclusion. A "Certificate of Occupancy" was obtained from the City of Hoover, Alabama, and the Sciaccas moved into the residence in October 1989.
In January 1990, both Maxus and the Sciaccas submitted demands for arbitration to the American Arbitration Association ("AAA"). Maxus' demand was received after the Sciaccas' demand and was treated as a reply and counterclaim to the demand of the Sciaccas. The Sciaccas' demand stated that the nature of the dispute was "disputed billing for house construction."
The parties mutually selected an arbitrator. Subsequently, the Sciaccas submitted to the AAA a written claim, which included items designated as "Defective / Incomplete / Warranty Work." The arbitrator allowed the Sciaccas to amend their claim and went forward with the hearings.
The hearing was conducted without the benefit of a stenographer. Therefore, there is no written record of what transpired during the hearing. The arbitrator's award read in part as follows:
 "I. Maxus Inc., d/b/a Maxus Construction Co. (hereinafter referred to as Maxus) shall receive $43,026.00 of the funds currently in Escrow with the balance going to Dr. Robert J. Sciacca. Maxus is not to receive any interest on their portion of the Escrow funds. This payment shall constitute all monies due Maxus from Dr. Robert J. Sciacca on the subject contract less any amounts designated herein to be used for other purposes. "The receipt of Maxus's share of the Escrow funds is contingent upon the successful completion of the items listed in 'Attachment 1,' attached hereto or as ordered herein.
 "II. Maxus is to assist in satisfying the work stated in 'Attachment I' and is solely responsible for paying the subcontractors any outstanding balance due them on subject contract (see Attachment No. 2). Maxus shall be the sole debtor of the outstanding subcontractor balances and must furnish a release of lien and debt to the Escrow trustee prior to the Escrow funds being released (see attachment number 2, List of Subcontractors). Any claim by a subcontractor, performing work on the Sciacca residence, against Dr. Robert J. Sciacca shall be invalid and should go against Maxus."
The award also addressed the issue of attorney fees and the arbitrator's and the AAA's fees and expenses. The award ordered that 11 items of work listed in attachment 1 be completed within a maximum of 60 calendar days from the date of the order. Further, an impartial third party, *Page 1379 
which could be the arbitrator, was to be hired to oversee the completion of the required work.
From the above order Maxus filed a motion with the Circuit Court of Shelby County requesting that the award be vacated. The Circuit Court affirmed the arbitration award, and Maxus now appeals to this Court. The broad issue before this Court, as framed by Maxus, concerns what standard of review and procedure a court in Alabama is to utilize in its review of an arbitration proceeding. In other words, once the parties have agreed to arbitrate a particular matter and one party is dissatisfied with the results, will this Court apply Alabama law or federal law to review the arbitration award? We emphasize that this is not a case where one of the parties is contending that arbitration was inappropriate. Clearly, both parties agreed to arbitrate the matter. It is only the law to be applied in reviewing the arbitration award that is in dispute.
Maxus contends that this transaction involved interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (FAA), applies. The Sciaccas argue that the FAA is not applicable and that the arbitration award may be reviewed only according to the Alabama Arbitration Statute.[1] Therefore, in order to determine the applicable law to be applied in reviewing this arbitration award, we must determine whether the FAA applies.
In order for the FAA to be applicable, there must be (1) a written agreement calling for arbitration and (2) a transaction involving interstate commerce. Ex parte Costa Head (Atrium),Ltd., 486 So.2d 1272 (Ala. 1986). As concerns the first requirement, the record is clear that there was a written agreement providing for arbitration. Further, we find that the arbitration agreement is part of a transaction involving interstate commerce.
To "involve commerce," an agreement need have only the slightest nexus with interstate commerce. Ex parte Costa Head. Here, while the transaction concerned the construction of a residence in Alabama, it involved the purchasing and installing of thousands of pieces of materials and equipment manufactured in, and procured from, many different states and foreign countries. As noted above, these materials were shipped by common and other carriers across state lines into Alabama, and were ordered, followed up, and paid for by using the U.S. mails, telephones, and interstate financial transaction settlement procedures and institutions. Further, the escrow funds were held, paid out, and invested by a national banking association using the U.S. mails, telephones, and interstate financial transaction settlement procedures and institutions. We, therefore, hold that the FAA is applicable here.
Having held that the FAA is applicable to this case, we point out that its application is controlled by principles of "substantive federal law." Ex parte Costa Head, at 1275. In cases governed by the FAA, the federal substantive law of arbitration governs, despite contrary state law or policy.Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852,79 L.Ed.2d 1 (1984); H.L. Fuller Construction Co. v. IndustrialDevelopment Board of the Town of Vincent, 590 So.2d 218 (Ala. 1991). Further, the provisions of the FAA govern all questions of the validity, interpretation, construction and enforceability of the arbitration agreement. See Moses H. ConeMemorial Hospital v. Mercury Construction Corp., 460 U.S. 1,103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Willoughby Roofing Supply Co. v. Kajima International, Inc., 598 F. Supp. 353
(N.D.Ala. 1984), affirmed, 776 F.2d 269 (11th Cir. 1985). *Page 1380 
Here, neither party argues that arbitration was inappropriate. Rather, Maxus contends that the scope of the arbitration hearing should have been limited solely to the resolution of the parties' billing disputes. It contends that the agreement refers only to a legal determination concerning disputed monies deposited under the escrow and that the only purpose of the arbitration was to determine the rights to amounts withheld from payments because of the billing disputes.
The Sciaccas contend that the dispute that was submitted to arbitration required a determination of whether there were defective or nonconforming work items, whether Maxus had any warranty obligations, whether certain items had been improperly billed, and whether the contractor's fee was properly calculated before there could be a finding of "amounts due Maxus under the Contract." They argue that the arbitration clause here had sufficient breadth to cover these breach of contract claims.
Arbitration agreements containing this same provision or similar provisions have been held to be quite broad. SeeWilloughby Roofing, supra. Courts have held that these agreements reveal an intent of the parties to vest the arbitrators with authority to decide practically any claim that could arise in relation to the contract and its performance.See Willoughby Roofing, supra. Therefore, in view of the broad language used in the agreements, coupled with the federal policy favoring a liberal construction of arbitration agreements, we conclude that the disputes involved here are well within the scope of the arbitration agreement.
Further, we note that, although the original demand for arbitration filed by the Sciaccas may have stated that the requested arbitration concerned the billing dispute, a subsequent request for additional relief was filed by the Sciaccas before any hearings were conducted. This request was granted by the arbitrator, and we find no error. See H.L.Fuller Construction Co.
The remainder of Maxus's argument focuses on having the arbitration award set aside for various reasons.
The FAA, specifically 9 U.S.C. § 10, permits the vacation of an arbitration award in the following instances:
 "(a) Where the award was procured by corruption, fraud, or undue means.
 "(b) Where there was evident partiality or corruption in the arbitrators, or either of them.
 "(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 "(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
Where parties, as in this case, have agreed that disputes should go to arbitration, the role of the courts in reviewing the arbitration award is limited. Transit Casualty Co. v.Trenwick Reinsurance Co., 659 F. Supp. 1346 (S.D.N.Y. 1987),affirmed, 841 F.2d 1117 (2d Cir. 1988); Saxis Steamship Co. v.Multifacs International Traders, Inc., 375 F.2d 577 (2d Cir. 1967). On motions to confirm or to vacate an award, it is not the function of courts to agree or disagree with the reasoning of the arbitrators. Application of States Marine Corp. ofDelaware, 127 F. Supp. 943 (S.D.N.Y. 1954). Courts are only to ascertain whether there exists one of the specific grounds for vacation of an award. Saxis Steamship Co. A court cannot set aside the arbitration award just because it disagrees with it; a policy allowing it to do so would undermine the federal policy of encouraging the settlement of disputes by arbitration. United Steelworkers of America v. Enterprise Wheel Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424
(1960); Virgin Islands Nursing Association's Bargaining Unit v.Schneider, 668 F.2d 221 (3d Cir. 1981). An award should be vacated only where the *Page 1381 
party attacking the award clearly establishes one of the grounds specified above. Catz American Co. v. Pearl GrangeFruit Exchange, Inc., 292 F. Supp. 549 (S.D.N.Y. 1968).
Having reviewed the briefs and the record before us, we conclude that Maxus has not clearly established that it was entitled to have the arbitration award vacated based on subpart (a), (b), or (c) of 9 U.S.C. § 10. However, as concerns subpart (d), related to whether the arbitrator exceeded his authority, we feel that Maxus's arguments merit a closer look.
Maxus argues that the arbitrator exceeded his authority in several instances, one of which concerned the award, or the lack of an award, of interest. Maxus contends that the arbitrator totally disregarded a provision of the escrow agreement entered into between the parties. This provision stated:
 "Owner and Contractor agree that such interest earned on the escrow funds shall accrue in the following manner:
 "B. As to any amounts withheld from payment of [Maxus's] billings, [Maxus] will be entitled to the interest earned on all sums withheld to which it is ultimately determined to be entitled from the date payment of each such billing was due until the date on which such sums are disbursed to [Maxus]."
The arbitrator's order states, "Maxus is not to receive any interest on their portion of the Escrow funds."
We find that the arbitrator's order concerning the interest payments exceeded his authority under the escrow agreement. The arbitrator is confined to the agreement between the parties and does not have the authority to dispense his own brand of justice. United States Postal Service v. National Associationof Letter Carriers, 847 F.2d 775 (11th Cir. 1988): Bonar v.Dean Witter Reynolds, Inc., 835 F.2d 1378 (11th Cir. 1988).
Further, the arbitration award was not clear and definite as to what the parties must do in order to comply. The purpose of the award is to decide every issue put to the arbitrator and to dispose of the issues finally and conclusively. Here, however, there is no such final and conclusive end. Rather, the award is indefinite, uncertain, and imperfect as concerns the "impartial third party" mentioned by the arbitrator. Even the monetary award of $43,026 to Maxus is completely uncertain as to its payment. The arbitration award makes the payment contingent on the "successful completion" of certain items that are to be performed by subcontractors.
While we recognize a policy of enforcing arbitration awards, we cannot uphold the award in the present case. Here, the arbitrator so exceeded or imperfectly executed his power that a "mutual, final, and definite award" was not made.See 9 U.S.C. § 10(d). Therefore, we hold that the circuit court should have set aside the award.
This judgment is due to be reversed and the case remanded to the circuit court with instructions to vacate the award.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ALMON, SHORES, ADAMS and STEAGALL, JJ., concur.
[1] We note that in support of their argument that the FAA does not apply, the Sciaccas have cited an opinion that has been withdrawn by this Court. H.L. Fuller Construction Co. v.Industrial Development Board of the Town of Vincent, [Ms. 89-1793, August 16, 1991]. The original H.L. FullerConstruction Co. opinion concerned a construction contract similar to the one in the instant case, and we held that the FAA did not apply. However, that opinion was replaced by another opinion, which held that the FAA did apply. H.L. FullerConstruction Co., 590 So.2d 218 (Ala. 1991).