13 So.3d 375 (2009)
Sherry Gay HEREFORD, individually and as mother and next friend of Alyssa Hereford, her minor daughter
v.
D.R. HORTON, INC.
1070396.
Supreme Court of Alabama.
January 9, 2009.
*376 William Eugene Rutledge of Rutledge & Yaghmai, Birmingham, for appellant.
D. Christopher Carson and Jason R. Bushby of Burr & Forman, LLP, Birmingham, for appellee.

On Application for Rehearing
SEE, Justice.
The opinion of September 5, 2008, is withdrawn, and the following opinion is substituted therefor.
Sherry Gay Hereford, individually and as mother and next friend of Alyssa Hereford, her minor daughter, appeals from a judgment of the Shelby Circuit Court, affirming a summary judgment entered by the arbitrator in favor of D.R. Horton, Inc. (hereinafter "Horton"). We affirm.

Facts and Procedural History
On January 6, 2003, Sherry Gay Hereford entered into a real-estate contract with Horton for the purchase of a newly constructed house that Horton had built. The contract included a one-year limited warranty that provided that Horton was responsible for repairing any latent defects in the house. The limited warranty expressly disclaimed all other warranties, whether express or implied, and provided that the limited warranty excluded recovery for "[i]ncidental, consequential, or secondary damages caused by a breach of this warranty." The limited warranty also contained an arbitration clause that provided that any dispute arising under the limited warranty shall be submitted to arbitration *377 in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 et seq.
Several months after the Herefords moved into the house, they discovered water damage in the third bedroom of the house. Hereford notified Horton of the damage, and a representative of Horton went to the house to investigate the cause of the water damage. Horton learned that the water damage was being caused by leakage from a condensation drain pipe for the heating, ventilation, and air-conditioning ("HVAC") system, which had become separated at one of its joints. Horton repaired the separation in the pipe joint, removed and replaced the damaged carpet, baseboards, insulation, and sheet rock in the bedroom, and sprayed the affected areas with a bleach-detergent solution. Horton planned to make further repairs to the bedroom; however, a dispute arose between Hereford and Horton regarding the extent of the repairs, and Hereford refused to allow Horton to make any further repairs to the house unless Horton agreed to meet Hereford's specific demands regarding the repairs.
Hereford hired Michael Ridge, a certified industrial hygienist, to inspect the house and to determine what measures were necessary to repair the damage caused by the leak in the HVAC pipe. The report prepared by Ridge recommended treating the entire house for mold. Specifically, Ridge's report recommended that the third bedroom should be enclosed with a barrier maintained with a high-efficiency particulate-air filtration system to prevent the spread of mold while the third bedroom was being treated. The report further advised that all the carpet and padding should be removed from the house, that the entire house should be cleaned, and that the contents of the house should be removed and stored during the repairs and treatment for mold. Concerned about the possible health hazards caused by exposure to mold, the Herefords moved out of the house and into a furnished apartment.
Hereford filed a claim under her homeowner's insurance policy with Alfa Insurance Company ("Alfa"), requesting that Alfa pay for the remediation of the Herefords' house and for the rental of the apartment. Alfa agreed to Hereford's requests and hired Pro-Care Complete Restoration Services, Inc., a professional remediation firm, to treat and repair the Herefords' house. Alfa paid over $20,000 for the services performed by Pro-Care. The Herefords moved back into their house after Pro-Care finished treating the house for mold and made the necessary repairs.
On February 27, 2004, Hereford sued Horton, claiming that Horton had breached the limited warranty by failing to repair the damage caused by the leak in the unattached HVAC pipe. Horton moved the trial court to dismiss Hereford's action or, in the alternative, to stay the proceedings and compel arbitration under 9 U.S.C § 1 et seq., the Federal Arbitration Act. Before the trial court ruled on Horton's motion, counsel for Horton notified the trial court that both sides had agreed to enter into settlement negotiations and, in the event that settlement negotiations were unsuccessful, to submit the dispute to a mutually agreeable form of binding arbitration. Thereafter, the trial court placed this case on the administrative docket pending a settlement or resolution of the dispute by an arbitrator.
The settlement negotiations between Hereford and Horton were unsuccessful, and the dispute was submitted to arbitration. On August 18, 2006, Horton moved the arbitrator for a summary judgment, arguing that it had not breached the limited warranty or, alternatively, that even if *378 it had breached the limited warranty, it was not liable for that breach because, it argued, the damages sought by Hereford were only consequential damages, the recovery of which was barred by the limited warranty. Hereford responded to Horton's summary-judgment motion, arguing that the provision in the limited warranty excluding the recovery of consequential damages was not enforceable because, she argued, the limited warranty had failed to meet its essential purpose. The arbitrator entered a summary judgment in favor of Horton and dismissed Hereford's complaint, finding that Hereford could not prevail on her breach-of-warranty claim because Hereford's damages either were covered by her homeowner's insurance policy or were excluded under the limited warranty as consequential damages.
Hereford appealed the arbitrator's decision to the Shelby Circuit Court, and Horton moved that court to confirm the arbitrator's decision. The trial court determined that the arbitrator's decision was due to be confirmed, and it entered an order in accordance with that finding. Hereford now appeals.

Standard of Review
In R.P. Industries, Inc. v. S & M Equipment Co., 896 So.2d 460 (2004), this Court reviewed the trial court's order granting a motion to confirm an arbitration award and denying the opposing party's motion to vacate that award. We stated:
"`Where parties, as in this case, have agreed that disputes should go to arbitration, the role of the courts in reviewing the arbitration award is limited. Transit Casualty Co. v. Trenwick Reinsurance Co., 659 F.Supp. 1346 (S.D.N.Y. 1987), affirmed, 841 F.2d 1117 (2d Cir. 1988); Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F.2d 577 (2d Cir.1967). On motions to confirm or to vacate an award, it is not the function of courts to agree or disagree with the reasoning of the arbitrators. Application of States Marine Corp. of Delaware, 127 F.Supp. 943 (S.D.N.Y. 1954). Courts are only to ascertain whether there exists one of the specific grounds for vacation of an award. Saxis Steamship Co. A court cannot set aside the arbitration award just because it disagrees with it; a policy allowing it to do so would undermine the federal policy of encouraging the settlement of disputes by arbitration. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Virgin Islands Nursing Association's Bargaining Unit v. Schneider, 668 F.2d 221 (3d Cir.1981). An award should be vacated only where the party attacking the award clearly establishes one of the grounds specified [in 9 U.S.C. § 10]. Catz American Co. v. Pearl Grange Fruit Exchange, Inc., 292 F.Supp. 549 (S.D.N.Y.1968).'"
896 So.2d at 464 (quoting Maxus, Inc. v. Sciacca, 598 So.2d 1376, 1380-81 (Ala. 1992)). The standard by which an appellate court reviews a trial court's order confirming an arbitration award under the Federal Arbitration Act is that questions of law are reviewed de novo and findings of fact are reviewed only for clear error. See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1289 (11th Cir.2002).

Analysis
Hereford asks this Court to reverse the trial court's judgment affirming the arbitrator's decision and to vacate the arbitrator's decision because, she argues, the arbitrator manifestly disregarded the law in entering a summary judgment in favor of Horton. Before we can reach that question, however, we must determine whether, *379 in light of the United States Supreme Court's recent decision in Hall Street Associates, L.L.C. v. Mattel, Inc., ___ U.S. ___, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), manifest disregard of the law remains a basis for obtaining relief from an arbitrator's award under the Federal Arbitration Act.
The Federal Arbitration Act, 9 U.S.C. § 2, provides, in pertinent part: "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." "Section 2 has the effect of preempting conflicting Alabama law, in particular § 8-1-41(3), Ala.Code 1975, which makes predispute agreements to arbitrate unenforceable." Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050, 1053 (Ala.2007) (citing Garikes, Wilson, & Atkinson, Inc. v. Episcopal Found. of Jefferson County, Inc., 614 So.2d 447, 448 (Ala.1993)). Therefore, in Alabama, predispute arbitration provisions are enforceable so long as the party moving to compel arbitration proves "the existence of a contract calling for arbitration and ... that that contract evidences a transaction involving interstate commerce." Title Max of Birmingham, 973 So.2d at 1052 (citing Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1132 (Ala. 2003)).
As a preliminary matter, we first address whether the arbitration agreement between Hereford and Horton was governed by the Federal Arbitration Act. The limited warranty states that arbitration would be "governed by the procedures of the Federal Arbitration Act, 9 U.S.C. 1 et seq." Moreover, in its motion to compel arbitration, Horton specifically invoked the "Federal Arbitration Act" and moved the trial court to stay all proceedings and to compel Hereford to arbitrate her breach-of-warranty claim against Horton. The parties agreed that Hereford's purchase of the house was a transaction that involved interstate commerce; the real-estate sales contract expressly provides that "[t]he Seller and Buyer acknowledge that this Agreement necessarily involves interstate commerce by virtue of the materials and components contained in the dwelling." Therefore, we hold that the arbitration proceedings in this case were governed by the Federal Arbitration Act.
Having determined that the arbitration in this case was conducted pursuant to the Federal Arbitration Act, we must now address whether manifest disregard of the law is a valid ground for obtaining relief from an arbitrator's decision under the Federal Arbitration Act. "`In cases governed by the [Federal Arbitration Act], the federal substantive law of arbitration governs, despite contrary state law or policy.'" Birmingham News Co. v. Horn, 901 So.2d 27, 44 (Ala.2004) (quoting Maxus, Inc., 598 So.2d at 1379), overruled on other grounds by Horton Homes, Inc. v. Shaner, 999 So.2d 462 (Ala.2008). The Supreme Court of the United States has stated that the Federal Arbitration Act "`create[s] a body of federal substantive law,'" which is "`applicable in state and federal courts.'" Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (quoting Southland Corp. v. Keating, 465 U.S. 1, 12, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)).
Under § 10 of the Federal Arbitration Act, a party is entitled to have an arbitrator's award vacated upon a showing of one of the following four grounds:
"(1) where the award was procured by corruption, fraud, or undue means;

*380 "(2) where there was evident partiality or corruption in the arbitrators, or either of them;
"(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
"(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made."
9 U.S.C. § 10(a).
In Birmingham News, we noted that the four grounds listed in 9 U.S.C. § 10(a) for vacating an arbitrator's award had been adopted by this Court as "applicable to an appeal of an arbitration award in this state." 901 So.2d at 46. This Court then adopted a fifth ground that could serve as an independent basis for vacating an arbitrator's award, namely, "manifest disregard of the law." 901 So.2d at 50. Recognition of manifest disregard of the law as a nonstatutory ground for vacating an arbitrator's award originated in a statement made by the Supreme Court of the United States in Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In that case, the Supreme Court remarked that the "[p]ower to vacate an award is limited," but it went on to state that "[i]n unrestricted submission, such as the present margin agreements envisage, the interpretations of the law by the arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error in interpretation." 346 U.S. at 436-37, 74 S.Ct. 182. As we noted in Birmingham News, all the federal courts of appeals and a majority of state appellate courts, including this Court in Birmingham News, thereafter adopted manifest disregard of the law as a fifth ground for vacating an arbitration award. 901 So.2d at 48-50.
In March of last year, the Supreme Court of the United States, in Hall Street Associates, L.L.C. v. Mattel, Inc., supra, rejected the conclusion that it had adopted manifest disregard of the law as an additional, nonstatutory ground for relief from an arbitrator's decision. The Supreme Court stated that such a reading was "too much for Wilko to bear" and that the text of the Federal Arbitration Act "compels a reading of the § 10 and § 11 categories [of relief] as exclusive." ___ U.S. at ___, 128 S.Ct. at 1404.[1] Under the Supreme *381 Court's decision in Hall Street Associates, therefore, manifest disregard of the law is no longer an independent and proper basis under the Federal Arbitration Act for vacating, modifying, or correcting an arbitrator's award. In light of the fact that the Federal Arbitration Act is federal law, and in light of the Supremacy Clause of the Constitution of the United States, Art. VI, we hereby overrule our earlier statement in Birmingham News that manifest disregard of the law is a ground for vacating, modifying, or correcting an arbitrator's award under the Federal Arbitration Act, and we also overrule any such language in our other cases construing federal arbitration law.
Hereford has raised manifest disregard of the law as the only ground on which she seeks to have the arbitrator's award vacated. Because manifest disregard of the law, by itself, is not a valid ground for relief from the arbitrator's award and because Hereford has not argued that this Court should vacate the decision of the arbitrator on any of the grounds specified in § 10(a) of the Federal Arbitration Act, she has not demonstrated that she is entitled to relief from the trial court's decision confirming the arbitrator's decision.

Conclusion
Because manifest disregard of the law is not a proper ground under the Federal Arbitration Act for vacating, modifying, or correcting an arbitrator's decision, Hereford has not demonstrated any error by the trial court. Therefore, we affirm the judgment of the trial court confirming the arbitrator's decision in favor of Horton.
APPLICATION OVERRULED; OPINION OF SEPTEMBER 5, 2008, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in overruling the application for rehearing and concurs in the result as to the opinion.
NOTES
[1] The Supreme Court noted that the use of the phrase "manifest disregard" in Wilko was particularly vague and that it could have had several possible meanings. The Court surmised that the use of the phrase "manifest disregard," instead of intending to create "a new ground for review," may merely have "referred to the § 10 grounds collectively, rather than adding to them.... Or, as some courts have thought, `manifest disregard' may have been shorthand for § 10(a)(3) or § 10(a)(4), authorizing vacatur when the arbitrators were `guilty of misconduct' or `exceeded their powers.'" Hall Street Associates, ___ U.S. at ___, 128 S.Ct. at 1404. Relying on these latter two possible meanings, some courts have held that "manifest disregard" survives as a judicial gloss on the specific grounds for vacatur listed in § 10 of the Federal Arbitration Act. See Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 94 (2d Cir.2008) (citing with approval decisions of other courts that have held that "manifest disregard" survives as a gloss on the § 10(a) grounds of the Federal Arbitration Act). We do not address whether manifest disregard of the law remains as a judicial gloss on the grounds specified in § 10(a) of the Federal Arbitration Act or is merely "shorthand for § 10(a)(3) or § 10(a)(4)." We simply note that by the express language of the Supreme Court of the United States the text of the Federal Arbitration Act "compels a reading of the § 10 and § 11 categories [of relief] as exclusive." ___ U.S. at ___, 128 S.Ct. at 1404.