MURDOCK, Justice
(concurring in the result).
The main opinion disclaims agreement with the understanding and application of various affirmative defenses upon which the arbitrators based their ruling in favor of Ernst & Young, LLP (“E & Y’). See, e.g., 159 So.3d at 1268 n. 5. This disclaimer is made for good reason. I believe the arbitrators misunderstood and misapplied critical legal principles regarding the imputation of an agent’s knowledge or actions to a principal. Without the erroneous imputations made by the arbitrators, the affirmative defenses upon which the arbitrators based their ruling would not have been available in this case. Nonetheless, principles regarding the limited judicial review of arbitration awards under the Federal Arbitration Act (“the FAA”) ap *1280 pear to prevent this Court from rectifying the arbitrators’ error.
A.
E & Y entered into a contract with and assumed a duty to HealthSouth Corporation, as a legal entity separate from HealthSouth’s officers, directors, and employees, to audit HealthSouth’s financial statements and, in this regard, to use due care to discover and report any material misstatements or fraud by HealthSouth’s officers, directors, and employees. For the arbitrators to hold that, even if an auditor fails to meet its required standard of care to discover and report such misstatements and fraud, the auditor can invoke such affirmative defenses as contributory negligence, the so-called “Hinkle rule,” and the doctrine of in pari delicto because HealthSouth officers, directors, and employees committed fraud is to make illusory the very obligation undertaken by the auditor, the obligation to use due care to discover and report that very fraud. In so holding, the arbitrators overread and placed far too much emphasis on § 8-2-7 and § 8-2-8, Ala.Code 1975, and relied upon cases involving circumstances distinguishable from the circumstances presented here.
The arbitrators concluded that “the plain language” of § 8-2-7 required that the wrongful conduct of HealthSouth’s officers, directors, and agents “must ... be imputed to HealthSouth.” Section 8-2-7 states:
“Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal.”
The arbitrators further relied upon § 8-2-8, which states: “As against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other.”
The arbitrators have read § 8-2-7 and § 8-2-8 too broadly. What is at issue in the present case is not the issue addressed in those statutes, i.e., whether a third party may hold a principal liable for the actions of the principal’s agent (as, for example, where the third party is the victim of a tort committed by the agent in the line and scope of the agent’s employment).[15] What is at issue in the present *1281 case is whether a principal may hold a third party liable for a tort committed against the principal by the third party, notwithstanding, or perhaps in conjunction with, a breach of duty owed the principal by the principal’s agent. As to that issue, the law is well settled that such actions are viable under the appropriate circumstances; the agent’s wrongful conduct or knowledge is not always imputed to the principal so as to preclude the principal from recovering against a third party.
For example, in Ex parte R.A. Brown & Co., 240 Ala. 157, 198 So. 138 (1940), this Court concluded that a defendant real-estate broker may be held liable by a corporation where the broker conspired with officers and agents of that corporation to perpetrate a fraud upon the corporation and its innocent shareholders. 240 Ala. at 158-59, 198 So. at 139. Specifically, this Court noted:
“The suit is by a corporate entity to redress a wrong done it as such. The fact that its principal officers are alleged to be the chief perpetrators of the wrong does not deprive the corporation from maintaining an action against them and all others who participated in it or who
are responsible for it. This power to maintain a suit at law is emphasized by the fact that some of the stockholders are supposed to be innocent of any wrong, and are those on whom the burden of it would most heavily fall.”
240 Ala. at 159, 198 So. at 139 (emphasis added). See also Restatement (Third) of Agency § 5.04 cmt. c (2006) (“A principal should not be held to assume the risk that an agent may act wrongfully in dealing with a third party who colludes with the agent in action that is adverse to the principal. That is, the third party should not benefit from imputing the agent’s knowledge to the principal when the third party itself acted wrongfully or otherwise in bad faith.” (emphasis added));[16] Restatement (Third) of Agency § 5.04 cmt. b (“[Njotice of material facts known to an agent is imputed to the principal when the agent deals with a third party who reasonably believes the agent to be authorized so to act for the principal. However, this section does not protect a third party who knows or has reason to know that an agent acts adversely to the principal.” (emphasis added)).
*1282 Comment c to § 5.04 of the Restatement provides illustrations that directly address the issue of fraud in the context of a corporate audit:
“4. A, the chief financial officer of P Corporation, withholds material financial information from T, P Corporation’s auditor. T does not independently discover the information and certifies materially inaccurate financial statements for P Corporation. Relying reasonably on P Corporation’s financial statements, which A furnishes to S, and acting in good faith, S enters into a transaction with P Corporation. S suffers loss when the true facts about P Corporation’s financial condition become evident. P Corporation is subject to liability to S for the loss suffered by S. A’s knowledge that P Corporation’s financial statements, as certified by T, do not reflect P Corporation’s true financial condition is imputed to P Corporation. S dealt with P Corporation in good faith. A is subject to liability to P as stated in §§ 8.01, 8.08, and 8.09 and to S as stated in §§ 7.01 and 7.02.
“5. Same facts as Illustration 4, except that T knows or has reason to know that A has withheld material information from T. P Corporation sues T, claiming that T is subject to liability to P for loss suffered by P Corporation due to its inaccurate financial statements. T may not assert, as a defense to P Corporation’s claim, that A’s knowledge of P Corporation’s true financial condition is imputed to P Corporation. T has not dealt with P Corporation in good faith.
“Illustrations 4. and 5 do not specify whether T’s failure independently to discover the information withheld by A is the consequence of common-law negligence on T’s part; whether T’s failure is the consequence of a breach of an independent professional or legal obligation owed by T as an auditor; or whether T has violated other legal requirements applicable to auditors, such as requirements of independence, prohibitions on conflicts of interest, or prohibitions on improper influence of a chief financial officer on the conduct of an audit. These issues are not relevant to P Corporation’s liability to S, the question in Illustration 4. These issues are, however, relevant when the legal relations in question are those between P Corporation and T, as in Illustration 5. The nature of T’s duties to P Corporation may subject T to liability to P Corporation, independently of whether A’s knowledge is imputed to P Corporation. For further discussion, see § 5.03, Comment b.”
(Emphasis added.)
The arbitrators attempted to distinguish illustration 5 on the ground that Health-South’s agents did not act adversely to HealthSouth. In so doing, however, they apparently did not appreciate the above-quoted comment language following illustration 5, and they apparently did not review comment b to Restatement (Third) of Agency § 5.03 (2006), which states:
“The nature of a principal’s relationship or transaction with a third party may require performance by the third party under terms that provide no defense to the third party that is derived from imputation of an agent’s knowledge. For example, if a principal makes a claim under a fidelity bond covering an employee’s dishonesty, the issuer of the bond may not decline to pay on the basis that the employee’s knowledge of the employee’s own wrongdoing is imputed to the principal.
*1283 “Imputation may provide the basis for a defense that may be asserted by third parties when sued by or on behalf of a principal. Defenses such as in pari de-licto may bar a plaintiff from recovering from a defendant whose conduct was also seriously culpable. If a principal’s agents fail to disclose or misstate material information to a third party who provides services to the principal, the agents’ conduct may result in flawed work by the service provider. The agents’ conduct may provide a defense to the service provider, if sued by or on behalf of the principal, on the basis that the agents’ knowledge, imputed to the principal, defeats a claim that the principal relied on the accuracy of work done by the service provider. Subject to § 5.04, the agents’ knowledge is imputed to the principal as a matter of basic agency law.”
(Emphasis added.) Comment b to § 5.03 goes on to explain as follows, however:

■“A principal may retain a service provider on terms or for tasks that make imputation of agents’ knowledge irrelevant to subsequent claims that the principal may assert against the service provider. For example, a principal may retain a service provider to assess the accuracy of its financial reporting or the adequacy of its internal financial controls or other internal processes, such as its processes for reporting and investigating complaints of harassment in the workplace. If the service provider fails to detect or report deficiencies, the principal’s claim against the service provider should not be defeated by imputing to the principal its agents’ knowledge of deficiencies in the processes under scrutiny.”

(Emphasis added.)
The distinctions reflected in comment b are important to the present case. Indeed, it is the fact that E & Y was retained to assist HealthSouth with the discovery of possible wrongdoing by HealthSouth1⅛ own officers, directors, and employees that distinguishes the present case from cases such as Ex parte HealthSouth Corp., 978 So.2d 745 (Ala.2007), one of the cases relied upon by the arbitrators in support of their imputation rationale. Unlike the taxing authorities that were the object of the fraudulent tax returns in Ex parte Health-South Corp. and that owed no duty to HealthSouth insofar as the accuracy of HealthSouth’s tax submissions, E & Y had a duty to assist HealthSouth in discovering and reporting wrongful conduct by Health-South’s own agents.
If, then, the arbitrators erred, the next question is whether this Court is in a position to correct that error.
B.
Notwithstanding the error in the arbitrators’ understanding of Alabama law, I reluctantly concur in the result reached in the main opinion. In so doing, and in order to explain my vote, I find it necessary to comment on certain aspects of the main opinion and to acknowledge certain aspects of United States Supreme Court precedent in this area that have generated no small amount of disagreement, and some confusion, among both federal and state courts.
First, I decline to join in the analysis offered in Part III.A of the main opinion, including the manner in which it attempts to use the Supreme Court’s opinion in Oxford Health Plans LLC v. Sutter, — U.S.-, 133 S.Ct. 2064, 186 L.Ed.2d 113 (2013). That opinion addresses only an error by arbitrators in construing a contract; I do not read it as addressing errors by arbitrators in their understanding of the law, as occurred here.
*1284 I also specifically decline to join that portion of Part III.A of the main opinion that reframes HealthSouth’s argument that the arbitrators exceeded their authority (9 U.S.C. § 10(a)(4)) as a “manifest-disregard-of-the-law” argument and then rejects it out of hand merely because it is a manifest-disregard-the-law argument. In so doing, the main opinion relies upon this Court’s holdings in Hereford v. D.R. Horton, Inc., 13 So.3d 375 (Ala.2009), and Cavalier Mfg., Inc. v. Gant, 143 So.3d 762, 768 (Ala.2013).
In Hereford, however, this Court stated merely that “manifest disregard of the law is no longer an independent and proper basis under the Federal Arbitration Act for vacating ... an arbitrator’s award.” 13 So.3d at 381. (Our holding in Cavalier was based on our holding in Hereford and was to similar effect. 143 So.3d at 768.) We acknowledged that the United States Supreme Court itself had not foreclosed the possibility that “manifest disregard of the law” might be another way of contending that arbitrators had “exceeded their powers” within the contemplation of 9 U.S.C. § 10(a)(4). 13 So.3d at 380 n. 1. Accordingly, we concluded in Hereford, and reiterated in Cavalier, 143 So.3d at 770, no more than that any challenge to an arbitration award along these lines must be framed in terms of one of the grounds for vacatur described in § 10(a) of the FAA.
HealthSouth has done what we asked. It repeatedly contends in its brief that in willfully ignoring Alabama law the arbitrators’ action “exceeds their power” within the meaning of § 10(a)(4). Yet, the main opinion rejects this argument without any legal analysis, other than, as noted, to reframe it as a “manifest-disregard-of-the-law” argument and then to conclude that, under Hereford and Cavalier, this “is not a valid basis for vacating an arbitration award.” 159 So.3d at 1273.
For my part, and notwithstanding my concurrence in Cavalier, further reflection has caused me to question whether arbitrators who willfully ignore applicable state law are not, in fact, “exceeding their power,” or acting “beyond their authority,” within the contemplation of 9 U.S.C. § 10(a)(4). The United States Supreme Court, itself, in Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), held open the possibility that the term “manifest disregard” is one that continues to have some use. In describing its earlier decision in Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Court stated:
“Maybe the term ‘manifest disregard’ was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 656 (1985) (Stevens, J., dissenting) (‘Arbitration awards are only reviewable for manifest disregard of the law, 9 U.S.C. §§ 10, 207’); I/S Stavborg v. National Metal Converters, Inc., 500 F.2d 424, 431 (C.A.2 1974). Or, as some courts have thought, ‘manifest disregard’ may have been shorthand for § 10(a)(3) or § 10(a)(4), the paragraphs authorizing vacatur when the arbitrators were ‘guilty of misconduct’ or ‘exceeded their powers.’ See, e.g., Kyocera [Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987 (9th Cir.2003),] supra, at 997.”
Hall Street, 552 U.S. at 585. More recently, in its decision in Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 559 U.S. 662, 672 n. 3, 130 S.Ct. 1758, 176 *1285 L.Ed.2d 605 (2010), the United States Supreme Court specifically stated:
“We do not decide whether ‘ “manifest disregard” ’ survives our decision in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 585 (2008), as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth in 9 U.S.C. § 10.”
See, e.g., Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1290 (9th Cir.2009); Coffee Beanery, Ltd. v. WW, L.L.C., 300 Fed.Appx. 415, 419 (6th Cir.2008) (not selected for publication in the Federal Reporter); Stolt-Nielsen S.A. v. Animal-Feeds Int’l Corp., 548 F.3d 85, 94-95 (2d Cir.2008) (“[T]he Hall Street Court also speculated that ‘the term “manifest disregard” ... merely referred to the § 10 grounds collectively, rather than adding to them’ — or as ‘shorthand for § 10(a)(3) or § 10(a)(4).’ Hall Street, [552 U.S. at 585.] It did not, we think, abrogate the ‘manifest disregard’ doctrine altogether.”), reversed on other grounds, Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). See also Cable Connection, Inc. v. DIRECTV, Inc., 44 Cal.4th 1334, 1351, 190 P.3d 586, 597, 82 Cal.Rptr.3d 229, 243 (2008) (noting that the language of §§ 10 and 11 refer to those provisions as “directed to ‘United States court in and for the district where the award was made’ ”). See generally Stephen Wills Murphy, Judicial Review of Arbitration Awards Under State Law 96 Va. L.Rev. 887, 912 n. 102 and accompanying text (June 2010) (noting 18 jurisdictions that appear to a allow a state court to review an arbitration award for the arbitrators’ “manifest disregard of the law”).
If I were persuaded that the conduct of the arbitrators in this case did indeed rise to the level of a manifest disregard of the law, rather than ordinary legal error, a further examination of Hall Street, Stolt-Nielsen, and the other authorities cited above would be in order. For purposes of this case, however, I find it unnecessary to resolve my questions regarding the functionality of the “manifest-disregard” standard and particularly whether it equates to one or more § 10(a)(4) defenses under the FAA. For all that appears in the record, the arbitrators did attempt to discern and apply Alabama law. They erred, and their error had grave consequences. But HealthSouth and E & Y did contract to have their dispute resolved by arbitration, and I cannot conclude that the manner in which the arbitrators went about that task rose to the level of a knowing and manifest disregard of the law or otherwise satisfied one of he defenses prescribed under §§ 10 and 11 of the FAA.[17] I therefore find my *1286 self compelled to concur m the result reached by the Court today.

. The cases the arbitrators cite in support of their understanding of imputation are either (1) third-party victim cases, see Todd v. Modern Woodmen of America, 620 So.2d 591 (Ala.1993) (insured suing insurer alleging fraud committed by agent); Pacific Mut. Life Ins. Co. v. Haslip, 553 So.2d 537 (Ala.1989) (same); Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250 (Ala.1998) (insured suing insurer based on agent's theft of premiums and insurer’s failure to supervise); and Reynolds v. Crown Pontiac, Inc., 753 So.2d 522 (Ala.Civ.App.1999) (customer's suing automobile dealership alleging fraud by dealership's employees), or (2) otherwise distinguishable from the present case. White-Spunner Constr., Inc. v. Construction Completion Co., 103 So.3d 781 (Ala.2012) (plurality opinion) (not based on imputation as to defendant, but on fact that defendant could not establish the elements of his contract claim, which arose out of an illegal contract with a third party, and an illegal contract cannot form the basis for a claim); Robinson v. Boohaker, Schillaci & Co., 767 So.2d 1092 (Ala.2000) (involving claims/counterclaims between former employee and employer as to breach of agreement between them and holding that relief may be denied where claims are based on an illegal agreement in which both parties participated); J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); and Stone v. Mellon Mortg. Co., 771 So.2d 451 (Ala.2000) (denying plaintiff’s claim against a defendant in rela *1281 tion to a wrongful $15 fax fee charged in connection with a refinancing because the plaintiff’s agent authorized the fee and his knowledge of it was imputed to the plaintiff; however, the case did not involve a specific duty assumed by the defendant as to whether plaintiff’s agent might be engaged in such wrongful activity).
The arbitrators also cite a case that, given the full context of this Court’s holding, actually supports the conclusion that knowledge will not be imputed to a principal where the third party had participated in the wrong by the agent. See American Cent. Life Ins. Co. v. First Nat’l Bank, 206 Ala. 535, 90 So. 294 (1921)(cited by the arbitrators for the proposition that "when, in the course of his employment, an agent acquires knowledge or receives notice of any fact material to the business he is employed to transact, his principal is deemed to have notice of such fact." 206 Ala. at 536, 90 So. at 294). The Court went on to hold, however, that knowledge of an insurance agent would not be imputed to his insurance-company employer because "the allegation [by the insurance company as the plaintiff] is of actual fraud on the part of the assured, and in this fact we find a just and well-established differentiation from those cases in which it has been held that an insurance company will not be permitted to take advantage of an oversight or wrongful act of its own agent, unaffected by fraud, to avoid its policy.” 206 Ala. at 536, 90 So. at 294.

. HealthSouth’s claims included claims that E & Y "aided and abetted” the fraud committed by HealthSouth's agents and that E & Y engaged in a conspiracy with HealthSouth's agents.

. In Part IV of its opinion in Hall Street, the United Supreme Court also offered the following:
"In holding that §§10 and 11 provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well. The FAA is not the only way into court for parties wanting review of arbitration awards: they, may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable. But here we speak only to the scope of the expeditious judicial review under §§ 9, 10, and 11, deciding nothing about other possible avenues for judicial enforcement of arbitration awards.”
552 U.S. at 590. See also Cable Connection, Inc., 44 Cal.4th at 1339, 1352, 190 P.3d at 589, 598, 82 Cal.Rptr.3d at 233, 244 (relying upon the foregoing passage in Hall Street and holding that California law permits a “more searching review” than is contemplated by the expedited federal court review for which 9 U.S.C. §§10 and 11 provide, specifically, that California state law allows parties to contract for judicial review of "errors of law or legal reasoning”; further holding that " ‘[njothing in the legislative reports and debates evidences a congressional intention that posta- *1286 ward and state court litigation rules be preempted so long as the basic policy upholding the enforceability of arbitration agreements remain[s] in full force and effect’ ").
We are not presented in this case with an argument that the arbitration agreement under consideration "contemplate[d] enforcement under state ... common law” or that a “judicial review of different scope” than is available under the FAA should be deemed to be afforded under such law.